[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 24-12936

Non-Argument Calendar

_____

CATOOSA COUNTY REPUBLICAN PARTY,
JOANNA HILDRETH,

                                                      Plaintiffs-Appellants,

*versus*

CATOOSA COUNTY BOARD OF ELECTIONS AND VOTER
REGISTRATION,
TOMMY DAVIS,
RON MCKELVY,
NINA CRAWFORD,
MARVIN CORNELISON,
Each in their individual and official Capacities
as Members of the Catoosa County Board of

Case 4:24-cv-00095-WMR   Document 36   Filed 06/12/25   Page 2 of 18
USCA11 Case: 24-12936   Document: 30-1   Date Filed: 06/12/2025   Page: 2 of 16

2                    Opinion of the Court                    24-12936

Elections and Voter Registration, et al.,

                                       Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:24-cv-00095-WMR

_____

Before ROSENBAUM, ABUDU, and WILSON, Circuit Judges.

PER CURIAM:

    Plaintiffs Catoosa County Republican Party ("Catoosa GOP") and Joanna Hildreth, its chair (collectively, "Plaintiffs"), appeal the dismissal of their 42 U.S.C. § 1983 civil-rights action, which alleged that the defendants violated their rights to (1) freedom of association, by forcing them to associate on the Republican primary ballot with certain political candidates they viewed as ideologically outside the local party; and (2) freedom of speech, by refusing to publish their proposed ballot questions.

    The district court dismissed the action, concluding that Plaintiffs lacked standing for the first claim and that the second claim failed because it was based on government speech.  After careful review, we hold that Plaintiffs have alleged a concrete injury to their associational right to exclude based on political beliefs,

Case 4:24-cv-00095-WMR    Document 36    Filed 06/12/25    Page 3 of 18
USCA11 Case: 24-12936    Document: 30-1    Date Filed: 06/12/2025    Page: 3 of 16

24-12936                Opinion of the Court                3

and that Plaintiffs have plausibly alleged an infringement of their private speech. We vacate and remand for further proceedings.

**I.**

In the run-up to the 2024 Georgia primary election, the Catoosa GOP, the county-level party organization for the Georgia Republican Party, refused to qualify four candidates who had applied to run as Republicans for partisan county offices. The Catoosa GOP asserted that these candidates did not share its values and policy goals, so it did not want to be associated with them.

The four excluded candidates sued in Catoosa County Superior Court and obtained an order requiring the Catoosa GOP to qualify them for the primary. When the Catoosa GOP refused, the state court issued an order on March 8, 2024, bypassing the Catoosa GOP and directing the Board of Elections to qualify the candidates as Republicans for the primary. Later that same day—the deadline to qualify for the primary—the Board of Elections complied with the court order and qualified the candidates.

In its March 8 order, the state court reasoned that the four excluded candidates were qualified under O.C.G.A. § 21-2-153(b), which, among other things, requires primary candidates to meet the requirements of "the procedural rules of their party." O.C.G.A. § 21-2-153(b). The court explained that the "sole basis" that the Catoosa GOP asserted for refusing to qualify the candidates was the lack of a "qualifying affidavit" from its executive committee, per its rules. But according to the court, the evidence showed that the denials of qualifying affidavits were based on the executive

Case 4:24-cv-00095-WMR   Document 36   Filed 06/12/25   Page 4 of 18
USCA11 Case: 24-12936   Document: 30-1   Date Filed: 06/12/2025   Page: 4 of 16

4                         Opinion of the Court                    24-12936

committee's "subjective determinations and *substantive* issues like disagreements on tax policy and property rights." Thus, the court found that the party lacked valid *procedural* grounds to deny qualification. The Catoosa GOP appealed, but the Supreme Court of Georgia dismissed the appeal for failure to seek review with due haste before the primary election. *Catoosa Cnty. Republican Party v. Henry*, 906 S.E.2d 750, 754 (Ga. 2024).

Soon after the March 8 order issued, Hildreth and the Catoosa GOP submitted several questions for placement on the primary ballot, including the following:

> 1. Do you think anti-Trump Democrats should be able to get a court order to force the elections board to qualify them as Republican candidates for office?
>
> 2. Did you know that [the four excluded candidates (listed by name)] were not approved to run as Republicans by the Republican Party?

In response, the Georgia Secretary of State's Office sent an email to the Catoosa GOP explaining that the "Secretary of State cannot publish party questions on the ballot that contain the names of candidates or commentary regarding those candidates, as that constitutes unlawful electioneering."

On April 2, 2024, the Board of Elections held a hearing on challenges to the excluded candidates' qualifications brought by Hildreth and others. The Board of Elections voted 4-1 not to remove the candidates from the Republican ballot.

Case 4:24-cv-00095-WMR   Document 36   Filed 06/12/25   Page 5 of 18
USCA11 Case: 24-12936   Document: 30-1   Date Filed: 06/12/2025   Page: 5 of 16

24-12936                Opinion of the Court                    5

The Catoosa GOP and Hildreth then brought this action against the Board of Elections, four members of that board (Tommy Davis, Nina Crawford, Ron McKelvy, and Marvin Cornelison), and its elections director (Tonya Moore) (collectively, "Defendants"), in their individual and official capacities, under § 1983. Plaintiffs' amended complaint alleged that the forced inclusion of the four candidates on the Republican primary ballot, and the exclusion of the requested ballot questions, violated their First Amendment rights to free association and speech.

The district court denied Plaintiffs' request for preliminary injunctive relief before the primary. The court then granted Defendants' motion to dismiss.

First, the district court found that Plaintiffs lacked standing for their freedom-of-association claim. The court reasoned that, while political parties had associational rights, Plaintiffs' rights in this case were based on the four candidates' "mere presence on the ballot," since the Catoosa GOP had adamantly refused to qualify the candidates. The court noted that "a party's right to associate for political purposes through the ballot is not absolute," and "also relies on the decision of its voters." The court also reasoned that county parties lacked discretion under Georgia law to deny qualification to candidates based on substantive, rather than procedural, concerns. Thus, the court concluded that "a county political party's associational rights are not injured 'in a personal and individual way' where the party does not qualify or endorse the

candidates and particularly where state law provides no discretionary authority for the party to deny the candidates access to the ballot."

Second, the district court determined that the free-speech claim failed because the ballot questions were government speech, for reasons we explore in more detail below. This appeal followed.

## II.

We review *de novo* the dismissal of a complaint for lack of standing or for failure to state a plausible claim to relief. *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1207 (11th Cir. 2025). In doing so, we generally accept the plaintiff's factual allegations as true and construe them in the light most favorable to the plaintiff. *Id.*

## III.

We start with the issue of standing. "Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.'" *Polelle*, 131 F.4th at 1207. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quotation marks omitted). The law of Article III standing is built on "separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.*

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the

Case 4:24-cv-00095-WMR    Document 36    Filed 06/12/25    Page 7 of 18
USCA11 Case: 24-12936    Document: 30-1    Date Filed: 06/12/2025    Page: 7 of 16

24-12936                Opinion of the Court                7

defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). These requirements ensure that federal courts resolve only "real controvers[ies] with real impact on real persons." *Id.* at 424. If Plaintiffs do not satisfy their burden on all three requirements, there is no case or controversy to resolve. *Id.* at 423.

### A.

Plaintiffs contend that, as a political party and its chair, they have "an almost unfettered" constitutional "right to control their own affairs, voters, rules, and associations." That right was infringed, according to Plaintiffs, when they were "forced to associate with the [four excluded candidates with] whom they have elected not to associate." They maintain that "if candidates who do not believe in the party's principles can run for office as representation of the party, or even win in a general election with their false title and representation, it hurts the party's credibility, brand, and ultimately even policy outcomes."

The Supreme Court has explained that the First Amendment "freedom to join together in furtherance of common political beliefs necessarily presupposes the freedom to identify the people who constitute the association," *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214 (1986) (internal quotation marks omitted), and "to limit the association to those people only," *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981). In other words, "a corollary of the right to associate is the right not to associate." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000).

Case 4:24-cv-00095-WMR   Document 36   Filed 06/12/25   Page 8 of 18
USCA11 Case: 24-12936   Document: 30-1   Date Filed: 06/12/2025   Page: 8 of 16

8                     Opinion of the Court                  24-12936

Regarding the right not to associate, the Supreme Court "has recognized that the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions—thus impairing the party's essential functions—and that political parties may accordingly protect themselves from intrusion by those with adverse political principles." *La Follette*, 450 U.S. at 122 (quotation marks omitted). And generally "a [s]tate, or a court, may not constitutionally substitute its own judgment for that of the [p]arty." *Id.* at 123–24.

We have recognized that a political party's right to advance the shared political beliefs of its members may include the right not to associate with candidates on a primary ballot. In *Duke v. Cleland*, for example, we held that controversial political figure David Duke could not force his way onto the Republican presidential primary ballot in Georgia if the party was an "unwilling partner." 954 F.2d 1526, 1530–31 (11th Cir. 1992). We noted that Supreme Court precedent recognized "the legitimacy of a political party's exclusion of a candidate in the party primary in order to protect itself from those with adverse political principles." *Id.* at 1532. And we concluded that the party's right to freedom of association "encompasses its decision to exclude Duke as a candidate on the Republican Primary ballot because Duke's political beliefs are inconsistent with those of the Republican Party." *Id.* Several years later, we reaffirmed that the "Republican Party has a First Amendment right to freedom of association and an attendant right to identify those who constitute the party based on political beliefs," and that it "did

not have to accept Duke as a republican presidential candidate." *Duke v. Massey*, 87 F.3d 1226, 1234 (11th Cir. 1996).

Here, Plaintiffs have established an actual, particularized, and concrete burden on their freedom of association. As we just explained, a political party's right to freedom of association encompasses the right to exclude "candidate[s] in the party primary in order to protect itself from those with adverse political principles." *Duke v. Cleland*, 954 F.2d at 1532. Acting under its rules, the Catoosa GOP sought to exclude certain candidates from the primary ballot because it viewed them as ideologically outside the local party. *See id.* Because of the state court's March 8, 2024, order and the later actions of the Board of Elections, though, it was prevented from doing so, harming the Catoosa GOP's freedom "to identify those who constitute the party based on political beliefs." *Duke v. Massey*, 87 F.3d at 1234.

We respectfully disagree with the district court's reasons for distinguishing our *Duke* cases. The court noted that this case involved a county-level political party, rather than a state or national party. But we see no reason why a county-level party, and its constituent members, would not also enjoy the right to freedom of association and the right to identify those who constitute the local party based on political beliefs. *See id.* The court also suggested that the *Duke* cases are different because they involved a presidential primary where the party "enjoyed substantial discretionary power" to select candidates, but Georgia state law "provides no discretion for a county party to deny qualification to candidates based

on substantive concerns." *See* O.C.G.A. § 21-2-153.  That state law may prevent the Catoosa GOP from excluding primary candidates for ideological reasons, though, simply shows that its right to freedom of association has been burdened.  It does not negate the right.  After all, a political party's constitutional right to exclude, "central to its freedom of association," is not derived from state law.  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 445 (2008).

That's not to say that the distinctions and observations that the district court made, or that Defendants raised on appeal, are not relevant to the merits analysis.  *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (explaining that a "flexible," balancing standard applies when reviewing a state election law, taking account of the strength of the respective interests).  They are.

But they do not prevent Plaintiffs from establishing standing to sue in the first place.  *See Polelle*, 131 F.4th at 1221 ("We've stressed repeatedly that standing in no way depends on the merits of the plaintiff's claims." (quotation marks omitted)).  Notably, the bulk of Defendants' briefing on whether Plaintiffs established a "concrete injury" is devoted to the constitutionality of O.C.G.A. § 21-2-153(b) and the state's compelling interests in regulating the primary system.  But those issues go to the merits, not to standing.

"[W]e've been clear that 'a small injury, "an identifiable trifle," is sufficient'" to confer standing.  *Polelle*, 131 F.4th at 1219 (quoting *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009)).  The district court found, and Defendants acknowledge, that O.C.G.A. § 21-2-153(b)(1) prohibits "substantive

Case 4:24-cv-00095-WMR   Document 36   Filed 06/12/25   Page 11 of 18
USCA11 Case: 24-12936   Document: 30-1   Date Filed: 06/12/2025   Page: 11 of 16

24-12936                Opinion of the Court                11

or ideological" exclusions from a primary, which curtailed Plaintiffs' ability "to identify those who constitute the party based on political beliefs." *Massey*, 87 F.3d at 1234; *see Cleland*, 954 F.2d at 1532 (recognizing a party's right to exclude "candidate[s] in the party primary in order to protect itself from those with adverse political principles"). It's not necessary to decide whether Plaintiffs' allegations of impairment of their right to freedom of association entitle them to relief to hold that they have standing to seek it. *See Polelle*, 131 F.4th at 1221–22.

For these reasons, we conclude that Plaintiffs have sufficiently alleged a legally cognizable injury for which they have standing to seek relief.

B.

Defendants also contend that any alleged constitutional violation is not traceable to the Board of Elections, but rather to the independent state-court order issued on March 8, 2024. We note, though, that the Board of Elections later voted not to remove the four excluded candidates on April 2, 2024. In any case, the district court did not reach the issue of traceability, and we conclude that remand is necessary on Plaintiffs' free-speech claim, as we explain below. So we decline to consider traceability in the first instance on appeal, and we leave that issue for the district court on remand.[1]

---

[1] For similar reasons, we decline to consider Defendants' arguments that Plaintiffs failed to state a plausible claim of municipal liability, or that we should

Case 4:24-cv-00095-WMR   Document 36   Filed 06/12/25   Page 12 of 18
USCA11 Case: 24-12936   Document: 30-1   Date Filed: 06/12/2025   Page: 12 of 16

12                     Opinion of the Court                  24-12936

### IV.

In their second claim, Plaintiffs assert a violation of the right to freedom of speech arising from the rejection of proposed primary ballot questions based on their content. The district court concluded that no free-speech claim existed because the ballot questions were government speech. Because Plaintiffs plausibly alleged infringement of their private speech, we respectfully disagree.

The First Amendment right to free speech "restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). "A government entity has the right to speak for itself . . . and to select the views that it wants to express." *Id.* (citations and quotation marks omitted). It also may "receive[] assistance from private sources for the purpose of delivering a government-controlled message" to express its views. *Id.* at 468.

But when the government offers a forum for private speech, it acts as a regulator, not a speaker, and must abide by First Amendment restrictions. *See id.* at 469–70. For instance, "a government entity may create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects," and it "may impose restrictions on speech that are reasonable and viewpoint neutral." *Id.* at 470.

---

abstain under *Younger v. Harris*, 401 U.S. 37 (1971). Defendants are free to renew these arguments on remand.

Case 4:24-cv-00095-WMR   Document 36   Filed 06/12/25   Page 13 of 18
USCA11 Case: 24-12936   Document: 30-1   Date Filed: 06/12/2025   Page: 13 of 16

24-12936               Opinion of the Court                13

No "precise test" determines what counts as government speech. *Leake v. Drinkard*, 14 F.4th 1242, 1248 (11th Cir. 2021). Instead, we look to three nondispositive factors: (1) history (whether the medium has traditionally communicated government messages); (2) endorsement (whether observers would reasonably believe the government has endorsed the message); and (3) control (whether the government maintains direct control over the message conveyed). *Id.* If all three factors are present, the speech "will almost always" be considered "that of the government." *Id.* We conclude that none of the three factors strongly support a finding that ballot questions in a partisan primary election constitute government speech, contrary to the court's findings, and that some are perhaps mixed or point toward a finding of private speech. Accordingly, we hold that the court erred in granting Defendants' motion to dismiss the free-speech claim. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athl. Assoc., Inc.*, 942 F.3d 1215, 1234 (11th Cir. 2019) (reversing the dismissal of a free-speech claim as based solely on government speech where "one of the three factors points toward finding that at least some private speech was disseminated over the public-address system and the control factor is mixed").

First, we see no indication that ballot questions in the context of a partisan primary election have long communicated messages from the government, even assuming ballot questions in a general election have been so used. Still, the record is largely undeveloped on this point.

Case 4:24-cv-00095-WMR   Document 36   Filed 06/12/25   Page 14 of 18
USCA11 Case: 24-12936   Document: 30-1   Date Filed: 06/12/2025   Page: 14 of 16

14                     Opinion of the Court                    24-12936

The second factor—endorsement—is arguably mixed. The court observed that government entities organize and fund primary elections, and ballots clearly contain at least some governmental speech. That the government plays some role in approving questions for the ballot arguably supports a finding of government speech as well. *Cf. Cambridge Christian Sch.*, 942 F.3d at 1234 ("[V]iews don't become the state's merely because they are uttered on a state platform, but being uttered on a state platform certainly helps.").

At the same time, though, voters who participate in a partisan primary election may understand that they are voting on internal party matters, not receiving government-endorsed messages. *Cf. Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) ("Ballots serve primarily to elect candidates, not as forums for political expression."). And here, Georgia law expressly requires primary ballots to include at the top in prominent type the words "OFFICIAL PRIMARY BALLOT OF [REPUBLICAN] PARTY." Finally, regarding control, the district court correctly conceded that Georgia law "appear[s] to give the Republican Party unfettered discretion regarding what is included in the [ballot] questions." Specifically, state law provides that "[i]f at any general primary a political party shall submit to its members any matter or question to be voted upon, . . . the superintendent or Secretary of State *shall have such language* printed on the ballot form." O.C.G.A. § 21-2-284(d). This mandatory language reflects that government entities lack direct control over messages submitted by "a political party . . . to its members."

Still, "[n]o case precedent says that the government must control every word or aspect of speech in order for the control factor to lean toward government speech." *Cambridge Christian Sch.*, 942 F.3d at 1235–26. The district court concluded that the government was in control of the messages because of the state's general ban on electioneering within the polling place. *See* O.C.G.A. §§ 21-2-413(d), 21-2-414(a). But the mere fact that an election-related regulation may limit private speech rights to some degree does not convert affected speech into government speech. *Cf. Burdick*, 504 U.S. at 433-4 (explaining that "[e]lection laws will invariably impose some burden upon individual voters," and are subject to a "flexible standard" of review).

In sum, the factors are either undeveloped, mixed, or point towards a conclusion that messages delivered on ballot questions constitute private speech, not governmental speech. At this "early stage" of litigation, Plaintiffs have done enough to make it plausible that the ballot questions at issue involve private speech, not solely government speech. *See Cambridge Christian Sch.*, 942 F.3d at 1236 (reversing the grant of a motion to dismiss where we lacked "enough information to say with any confidence that . . . [speech at issue] was and would have been government speech as a matter of law"). The district court therefore erred in dismissing Plaintiffs' free speech claim on that basis. We otherwise express and imply no opinion on the merits of Plaintiffs' claim, nor do we "foreclose that a court may later conclude on a fuller record that any message delivered [in primary ballot questions] was government speech." *See Cambridge Christian Sch.*, 942 F.3d at 1246 ("The only question

Case 4:24-cv-00095-WMR   Document 36   Filed 06/12/25   Page 16 of 18
USCA11 Case: 24-12936   Document: 30-1   Date Filed: 06/12/2025   Page: 16 of 16

16                    Opinion of the Court                    24-12936

we face today is whether Cambridge Christian has said enough to make out a plausible case -- not whether it will probably prevail.") (quotation marks omitted).

## V.

For these reasons, we vacate the dismissal of Plaintiffs' § 1983 action, and we remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 12, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 24-12936-HH
Case Style: Catoosa County Republican Party, et al v. Catoosa County Board of Elections and Voter Regist, et al
District Court Docket No: 4:24-cv-00095-WMR

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing must include a Certificate of Interested Persons**. See 11th Cir. R. 40-3.

Costs
Costs are taxed against Appellee(s) / Respondent(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion