UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| CATOOSA COUNTY REPUBLICAN PARTY, and JOANNA HILDRETH | ) ) ) | |
| *Plaintiffs,* | ) ) | CIVIL ACTION FILE NO. 4:24-CV-00095-WMR |
| v. | ) ) | |
| CATOOSA COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION, and TOMMY DAVIS, RON MCKELVY, NINA CRAWFORD, MARVIN CORNELISON, Each in their individual and official Capacities as Members of the Catoosa County Board of Elections and Voter Registration, and TONYA MOORE, as director of the Board Of Elections and Voter Registration | ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS

Plaintiffs hereby respond to Defendants' Second Motion to Dismiss,

showing the Court as follows:

Plaintiffs seek declaratory relief, injunctive relief, and monetary damages as

well as attorneys' fees for Defendants' violation of their constitutional rights under

42 U.S.C. § 1983.[1]

---

[1] *See* Complaint.

Specifically, Plaintiffs allege that Defendants violated Plaintiffs' First Amendment rights by (1) Allowing a number of non-Republican candidates, that the Plaintiffs have taken all steps possible to not associate with, to be on the Republican primary ballot, and (2) Refusing to place mandatory ballot questions, submitted by the Plaintiffs, on the Republican primary ballot due to the content of the questions.

Plaintiffs filed a Verified Complaint[2] laying out the factual history and details of the claims, and Plaintiffs requested an emergency injunction which was heard on or about April 17, 2024.[3] That request was denied, leaving Plaintiffs' harms continuing.

After granting Defendants' First Motion to Dismiss on various grounds, the Eleventh Circuit Court of Appeals vacated the decision and remanded. The per curiam decision accurately set out that the Plaintiffs have both a constitutional right to Freedom of Association regarding choice of candidates to associate with, and a right to Freedom of Speech when it comes to ballot questions.

Plaintiff notes that pursuant to Federal Rules of Civil Procedure 12(g)(2), Defendants have waived any defenses that were not brought up in their Original Motion to Dismiss.

---

[2] *See* Verified Complaint (Doc 1).
[3] Id.

I.      **The Harm to Plaintiff's Rights is Directly Caused by the Actions of Defendants in Putting the false Republicans on the Republican Party Primary Ballot, as well as Denying the Ballot Questions That the Republican Party Requested be Placed on the Ballot, thereby Violating Their Constitutional Rights Under 42 U.S.C. § 1983, Giving Plaintiffs Standing**

Defendants argue that because they were allegedly following an Order from Superior Court, the Plaintiffs lack standing.

This disregards the basic concept of standing, and attempts to usurp federal constitutional protections by claiming that state law can somehow supersede the rights guaranteed by the United States Constitution.

42 U.S.C § 1983 states that

> "Every person who, under **color of any statute, ordinance, regulation, custom, or usage, of any State or Territory** or the District of Columbia, **subjects, or causes to be subjected**, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any **rights**, privileges, or immunities **secured by the Constitution and laws**, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…" (**Emphasis** added)

Here, and as shown by the cited cases throughout this brief, a political party organization is both considered a "person" for federal law purposes, and such a party has rights secured by the Constitution and laws. _California Democratic Party v. Jones_, 530 U.S. 567, 574–76, 120 S. Ct. 2402, 2408–09, 147 L. Ed. 2d 502 (2000). A political party has standing to receive redress for the violation of its rights.

The Plaintiff Catoosa County Republican Party and its Chairperson were injured by having their "…right not to associate…"[4] violated, by being forced to associate with the Independent Candidates whom they have elected not to associate.

In the oft-ignored section of 42 U.S.C. § 1983, this is specifically contemplated and protected, as rights can be violated under the "regulation, custom, or usage, of any State…" and there is liability.

Defendants attempt to ignore this by pretending that the "March 8 Order" somehow relieves them of guilt or liability for their actions. The Defendants have notably cited no cases to support this argument, instead claiming that under state law, a court has contempt power for resistance by persons "…to any lawful…order…of the courts".[5] Key to this is the concept of a "lawful order", which would not apply if the act ordered is, in fact, unlawful by being unconstitutional or violative of a person's rights.

Furthermore, even if Defendants could have been punished by the state court, Plaintiffs are aware of no cases that have held that the law that provides

---

[4] California Democratic Party v. Jones, 530 U.S. 567, 575, 120 S. Ct. 2402, 2408, 147 L. Ed. 2d 502 (2000).
[5] O.C.G.A. § 15-1-4(a)(3)

immunity to governmental actors for violations of federal constitutional rights because of a state court order, and Defendants have cited none.[6]

To the contrary, given that 42 U.S.C. § 1983 was enacted, in part, to protect the Constitutional rights of individuals being discriminated against and targeted for rights violations by state government entities, often due to their race, it would completely subvert the obvious intent of the law if state courts could order state actors to violate the rights of citizens, and then hide behind those state court orders when sued under 42 U.S.C. § 1983.

The fact state law may allow for punishment for failure to follow unconstitutional orders does not suddenly mean that people who take actions pursuant to such an unconstitutional order are protected from 42 U.S.C. § 1983 liability. The opposite is true: those individuals who violate the constitutional rights of others are often sued, and held liable, for their actions, even if they claim or allege that other government entities caused them to carry out the unconstitutional actions.

---

[6] Georgia courts do not take the position that their orders can extend state judicial immunity to acts of non-parties, such as Defendant Tonya Moore, mentioned in their orders. Indeed, in _Stanley v. Patterson_, 314 GA. 582 (2022), the court observed that "the lodestar of [Georgia state] judicial and quasi-judicial immunity is whether the actions constitute "a function normally performed by a judge." _Stanley v. Patterson_, 314 Ga. 582, 585, 878 S.E.2d 529, 533 (2022)(removing an order from a stack of case file is not a judicial function). Judicial functions are those "involved in resolving disputes between parties who have invoked the jurisdiction of a court." _Forreste v White_, 484 U.S. 219 at 227, 108 S.Ct. 538 (III), 108 S.Ct. 538 (2022)  The publishing of party ballot questions, or the suppression of political party candidates, is not part of any judicial duty.

When discussing the traceability of the excluded Ballot Questions, the Secretary of State's communication regarding the Ballot Questions does not absolve the Defendants from responsibility. The decision to not place the questions on the ballot was the Defendants'.

Defendants admitted to the Court, through counsel, at the hearing on April 17, 2024 on Plaintiff's Emergency Petition, that Defendants received word from the Secretary of State's office the day before the Defendants' vote to exclude the Ballot Questions, that the Secretary of State's office had reconsidered its position and that it was up to Defendants as to whether or not to place the Ballot Questions on the ballot. The Defendants, not the Secretary of State, made the decision to chill, restrict, and discourage Plaintiffs' speech.

In sum, Plaintiffs seek declaratory relief that the Defendants' actions are, were, and would be a violation of Plaintiffs' rights. Whether or not any third party, including but not limited to a Superior Court Order, debatably contributed to the decisions of Defendants is immaterial: the Defendants took the actions that violated Plaintiffs' rights. Current and prospective redress of the injuries against Plaintiffs, by an Order against the Defendants, the entities that physically control the Republican Party's primary ballot and puts the candidates and ballot questions on it, is possible, traceable and warranted.

## II.    Defendants Are Liable Under Monell Because They Are the Ultimate Policy Makers who Violated Plaintiffs' Clearly Established Constitutional Rights

Defendants seek to again blame a state court order, which is likely directing unconstitutional conduct, for their unconstitutional actions. While Defendants correctly cite that a local government may be held liable only when a constitutional violation was inflicted pursuant to that local government's policy or custom, the local government at issue is the Defendant Catoosa County Board of Elections and Voter Registration, and their official policies that they enacted, by the individual votes of the other Defendants, were (1) to allow the Independent Candidates to be qualified as Republicans and listed on the primary (and potentially general) election ballots as Republicans, despite Plaintiffs' strong opposition, violating their right not to associate; and (2) to prevent and censor Plaintiffs' desired speech, by prohibiting the ballot questions that were submitted. This is **exactly** what *Monell* is designed to prevent.  Plaintiffs have alleged that the Defendants took these unlawful actions both on March 8, 2024[7], and on April 2, 2024, when they voted to leave the Independent Candidates on the Republican primary ballot.[8]

Defendant Moore, as a person who acted under color of law to originally sign documentation putting Independent Candidates on the Republican ballot,

---

[7] Complaint ¶ 19.
[8] Complaint ¶ 28.

leading to various elector challenges on April 2, 2024, was also a final policymaker who violated Plaintiffs' rights by ignoring and violating their right not to associate.

Again, it bears repeating the fact that Defendants claim that their policy actions were the result of a **state court** order does not change the fact that the actions were violations of the Plaintiffs' federal constitutional rights under 42 U.S.C. § 1983.

For example, a state court order directing law enforcement officers to pull over black drivers, to abuse female detainees, or to otherwise violate the rights of citizens would not shield the individual officers from federal jurisdiction or liability under 42 U.S.C. § 1983. Likewise, here, a state court order directing that a political party's rights be violated does not shield those who carried out the order from such federal liability, as such usages are specifically actions that are being taken under "color of law" (i.e. the color of a **state court order**), and that is the exact abuse 42 U.S.C. § 1983 is designed to prevent.

As Plaintiffs are basing their Freedom of Association Claim on the Defendants' decision to create a policy and decision that forces the Plaintiffs to be associated with Independent Candidates, the Defendants' argument that there is potential state court review, applying state law, is immaterial. Nothing in O.C.G.A. § 21-2-6 mentions the United States Constitution, and even if it did, it only deals

with elector challenges, not any claims by a political party (which would not be allowed), or any 42 U.S.C. § 1983 claims.

Furthermore, to the extent Defendants' argument is even slightly persuasive, it is no longer applicable, as the Superior Court of Catoosa County dismissed the election challenges, based on a technicality regarding the Defendant Catoosa County Board of Elections and Registration was deemed to not be a proper party under state law, and that individual Independent Candidates are.

In other words, there is currently no pending claim that appears to be able to vindicate these named Plaintiffs' rights against the named Defendants, for Defendants' unlawful actions, or for actions that the Defendants are likely to take in future primary elections as soon as next year, if this is not resolved.

The actions of Defendants, individually, collectively, and in their official and individual capacities were the direct actions that harmed Plaintiffs and violated their rights.

III.    **While Defendants have Abandoned Their Explicit Argument for *Younger* Abstention, They Have Argued That State Court Matters Prohibit This Claim: Such Arguments are Inapplicable Because There is No Pending State Criminal Case and Federal Courts Should Elect to Exercise Jurisdiction Over Civil Claims Unless Being Requested to Administer State Court Judicial Functions**

Pursuant to <u>Wexler v. Lapore</u>[9], federal courts should exercise jurisdiction over cases when they have it, and rarely abstain. Litigants are not required to raise claims in state court, even in cases where there is pending state action. When abstaining, it should only be in a situation where the court is being called upon to control or administer state court judicial functions, or there would be inappropriate interference in state operations with "meticulous and burdensome oversight". The Defendant is not a state court.

While the Defendants have mentioned various state court actions, that is not the standard that applies and such a limiting interpretation was rejected in <u>Wexler</u>. There, the Court held that having multiple cases, **even if an order in the federal case may end a state case**, is foreseeable and permissible, as litigants should not be, and are not, precluded from exerting their rights in federal court.

In addition to the caselaw, this makes logical sense. If state agencies or courts, as is here, are violating a Plaintiffs' rights, and a Plaintiff seeks to bring a 42 USC § 1983 action, a Plaintiff should not be required to litigate it in a state forum that may be hostile to those federal rights.

Furthermore, the state cases are all notably different. The "First Case" where the candidates attempted to force the Catoosa County Republican Party, through a

---

[9] <u>Wexler v. Lapore</u>, 385 F3d 1336 (2004)

restraining order to qualify the candidates, is a one-sided case where the Plaintiff Catoosa County Republican Party and its officers were Defendants.

The candidates in that case could dismiss their case at any time, causing the matter to evade review, and leave the Plaintiffs here with no remedy.

The "Second Case", or the appeals from the Board of Elections decision under state law by various electors, was a record review by Superior Court between individual electors who brought challenges and the candidates. There is no path to litigate a 42 USC § 1983 claim in that forum, and in fact, the state law that authorizes the review explicitly does not mention federal constitutional review, only review relevant to the state law and constitution. And most importantly, that state law only allows electors, not political parties, to carry out any action.

Even if *Middlesex* applied instead of *Wexler*, as you can see above, there are not pending state court proceedings with the same parties and interests, important state interests are not implicated as it is not an attempt to control state court judicial administration, and there is no adequate way to raise the federal constitutional questions in the state court cases.

For all of these reasons, abstention would be inappropriate.

## IV. Defendants are Not Entitled to Qualified Immunity on Any Federal Claims; The Eleventh Circuit Order's Case Citations Make Clear That the Law Was Clearly Established

In the Order vacating and remanding the case at bar, the Eleventh Circuit Court of Appeals pointed out that the Supreme Court had previously explained that "…the First Amendment "freedom to join together in furtherance of common political beliefs necessarily presupposes the freedom to identify the people who constitute the association…", as well as that "…generally "a [s]tate, or a court, may not constitutionally substitute its own judgment for that of the [p]arty…". The Eleventh Circuit stated that it had recognized "…that a political party's right to advance the shared political beliefs of its members may include the right not to associate with candidates on a primary ballot…".

The Eleventh Circuit explicitly held that, in regards to the case here, "…Plaintiffs have established an actual, particularized, and concrete burden on their freedom of association. As we just explained, a political party's right to freedom of association encompasses the right to exclude "candidate[s] in the party primary in order to protect itself from those with adverse political principles…" and that "…Acting under its rules, the Catoosa GOP sought to exclude certain candidates from the primary ballot because it viewed them as ideologically outside the local party…".

This decision, and specifically the citations to Supreme Court cases and the Eleventh Circuit *Duke* cases, show that the Right to Freedom of Association in a

primary election was already clearly established and that violations of that right are actionable.

Furthermore, this also applies to the Freedom of Speech claim, where it is plainly obvious as well that the Eleventh Circuit recognizes that controlling a private entity's speech is a clearly established rights violation, and the primary thing to be decided by the trial court is whether or not the primary ballot questions are government speech or private speech.

In any event, the rights are both clearly established.

### a. Plaintiffs' Right to Freedom of Speech is Clearly Established

The Plaintiffs' First Amendment right to Freedom of Speech was violated by the Defendants' failure to include the Ballot Questions on the Primary ballot, despite Defendants' attempt to again cast blame for their decision on **state** actors.

The Plaintiffs' injury—the exclusion of their questions from the ballot— directly results from the Defendants' actions and vote to keep them off the ballot, thus making the actions fairly traceable to the Defendants.

Contrary to the Defendants' assertions, the regulation of the Ballot Questions does not qualify as a reasonable restriction in a nonpublic forum. As quoted by the Defendants, a "designated public forum" is a forum that 'not traditionally been

regarded as a public forum' but which the government has 'intentionally opened up for that purpose."[10]

Here, the Republican primary ballot was specifically opened up, by law, to any questions that the Catoosa County Republican Party wished to place on it. There are no regulations or restrictions limiting that ability, and the law mandates that the questions "shall" be placed on the ballot. This makes it either a traditional public forum or a designated public forum, as it's specifically been designated for any and all questions that the Catoosa County Republican Party wishes to place on it.

None of Defendants' previously cited cases, or even their argument, directly address this fact. Instead, Defendants cite a case that refers to the legality of restrictions on signs and campaign materials that are trying to influence people how to "vote for or refrain from voting for a candidate or ballot question".

This is clearly inapplicable, as is any Georgia law regarding campaigning in polling places, as the Plaintiffs are entitled under the law to be able to create and place the ballot questions being voted on.

Even if the Court were to find that the ballot is a nonpublic forum that is subject to reasonable restrictions, that still does not defeat Plaintiffs' claims, as

---

[10] <u>Pleasant Grove City v. Summum</u>, 555 U.S. 460, 469-470 (2009).

government, and therefore the Defendants, still may not arbitrarily restrict the content of questions based on their content.

Furthermore, even if the Court finds that it is a non-public forum instead of a designated forum or public forum, and even if the Court finds that the government can restrict the ballot questions using **state** law, the Defendants are **<u>still</u>** liable because the exclusion was based on the content of the questions, which aimed to address significant political issues pertinent to the party and its members. The Secretary of State's classification of these questions as "electioneering" is overly broad and suppresses legitimate political expression. State law does not restrict the action of political parties on ballot questions.

O.C.G.A. § 21-2-413 prohibits actions and "electioneering" by stating that "No person…" shall carry out various actions. Clearly, this is not a restriction on a ballot or a political party organization submitting the same ballot questions that the statute refers to as it being unlawful to try to get people to vote for or against.

The restriction on the Ballot Questions constitutes unreasonable content discrimination, which is prohibited even in nonpublic forums.

And while the Defendants cite to the Plaintiffs' party rules, Defendants also misinterpret the Plaintiffs' internal party rules. The rules cited by Defendants are about the actual use of an officer "title" when it comes to endorsing candidates, not performing party activities. While individual members may not be able to use their

title to endorse candidates, that does not prohibit official party action/votes in support of specific candidates, to oppose specific candidates, or for the party to otherwise be involved or take sides in the election process.

The Ballot Questions, while they might reflect intra-party disagreements, are an essential exercise of the party members' First Amendment rights to free speech and association. The Plaintiffs' internal regulations should not be construed in a manner that undermines these constitutional rights. Any purported violation of party rules does not justify the infringement of federal constitutional protections. Furthermore, it is also clearly established caselaw that the government should not involve itself in internal party operations.[11]

The Defendants' failure to include the Ballot Questions on the Primary ballot constitutes a violation of the Plaintiffs' First Amendment rights. There was no discretion in the law when it comes to ballot questions: the Defendants were required to place them on the ballot by state law, and required to not discriminate on content of speech by the First Amendment.

Plaintiffs' injury is directly traceable to the Defendants' actions, and the exclusion of the questions was an unreasonable restriction on political speech. Therefore, the Plaintiffs have set forth a plausible Freedom of Speech claim, and

---

[11] Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 228–29, 109 S. Ct. 1013, 1023, 103 L. Ed. 2d 271 (1989)

Count II should not be dismissed. The court must recognize the fundamental importance of protecting political expression within the electoral process and ensure that the Plaintiffs' rights are upheld.

### b. Defendants Are Not Entitled To Qualified Immunity, As They Violated Plaintiffs' Clearly Established Constitutional Rights Regarding Freedom of Association

State actions impinging on political speech must meet strict scrutiny.[12] The removal of ballot questions implicates core political speech, and such censorship must be scrutinized rigorously.[13] Each Defendant individually voted and decided to keep the ballot questions off the ballot due to the content of the speech, instead of recognizing their plain legal obligation to place the questions on the ballot, as commanded by law. The actions of Defendants, individually, therefore directly violated Plaintiffs' rights and the Defendants are liable for those actions.

For the Freedom of Association claim, the right is clearly established by extensive caselaw that groups have a right to exclude.

In one case, the State of Wisconsin attempted to control how delegates to a national political party convention were chosen. Court struck down the law as unconstitutional.  The Supreme Court "recognized that the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions—

---

[12] Reed v. Town of Gilbert, 576 U.S. 155 (2015)
[13] *See* Buckley v. Valeo, 424 U.S. 1, 14 (1976); *See Also* McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346-47 (1995)

thus impairing the party's essential functions—and that political parties may accordingly protect themselves "from intrusion by those with adverse political principles".[14]

In another case, the State of California had a law prohibiting party endorsements and statements of opposition to candidates, as well as restrictions on how the political party's governing bodies were elected. These state laws were declared unconstitutional and the restrictions were struck down **because** they violate the party's clearly established rights to freedom of speech and freedom of association.

Of note, the Supreme Court explicitly rejected the argument from the State that it was a compelling state interest to restrict information going to citizens, which is relevant to the proposed ballot questions, as that is exactly what the Defendants are arguing above.[15]

In yet another case, Connecticut law prohibited parties from allowing independents to vote in the primary. The Supreme Court held this law

---

[14] <u>Democratic Party of U. S. v. Wisconsin ex rel. La Follette</u>, 450 U.S. 107, 122, 101 S. Ct. 1010, 1019, 67 L. Ed. 2d 82 (1981).

[15] "…However, " '[a] State's claim that it is enhancing the ability of its citizenry to make wise decisions by **restricting the flow of information to them must be viewed with some skepticism.**' " *Tashjian, supra,* 479 U.S., at 221, 107 S.Ct., at 552 (quoting *Anderson v. Celebrezze, supra,* 460 U.S., at 798, 103 S.Ct., at 1575).[18] While a State may regulate the **\*229** flow of information between political associations and their members when necessary to prevent fraud and corruption…". <u>Eu v. San Francisco Cnty. Democratic Cent. Comm.</u>, 489 U.S. 214, 228–29, 109 S. Ct. 1013, 1023, 103 L. Ed. 2d 271 (1989).

unconstitutional, even after years prior, a court held the law constitutional when a independent voter tried to claim a right to vote in the party primary.

The law was struck down because the law, by restricting the party's abilities to act regarding association with voters, was violative of the party's right to freedom of association.

Of note, the Supreme Court stated that "its statute is well designed to save the Republican Party from undertaking a course of conduct destructive of its own interests. But on this point "even if the State were correct, **a State, or a court, may not constitutionally substitute its own judgment for that of the Party**".[16] (**emphasis** added)

In yet another case, here in Georgia, the Eleventh Circuit explicitly held that candidates do not have a right to force themselves on to a party's primary ballot, and that it is a party's right to not associate.

David Duke sued a committee acting on behalf of the Republican Party and the Secretary of State under 42 U.S.C. § 1983 claiming a right to be on the Presidential primary ballot as a Republican. He also made arguments, similar to the Defendants, that voters have a right to vote for a candidate they want to see in a primary. The Eleventh Circuit rejected this challenge, and held that a candidate,

---

[16] Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 212, 107 S. Ct. 544, 547, 93 L. Ed. 2d 514 (1986).

Duke in that case, does not have a right to associate with "**an unwilling partner**" and that his supporters did not show they had a right to vote for a candidate in a primary, and that they could always have supported him as an independent candidate or third-party candidate.[17]

And in a final case, <u>California Democratic Party v. Jones,</u> the State of California attempted to force association yet again. If it was not already clearly established, it was done so when the act was declared unconstitutional and the Supreme Court stated:

> "In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views."[18]

and

> "That is to say, a corollary of the right to associate is the right not to associate. " 'Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being."[19]

While the Defendants seek to limit the application of this case to simply striking down a proposition, the Defendants are mishandling a basic concept of

---

[17] <u>Duke v. Massey</u>, 87 F.3d 1226, 1233 (11th Cir. 1996).
[18] <u>California Democratic Party v. Jones</u>, 530 U.S. 567, 575, 120 S. Ct. 2402, 2408, 147 L. Ed. 2d 502 (2000).
[19] <u>California Democratic Party v. Jones</u>, 530 U.S. 567, 574, 120 S. Ct. 2402, 2408, 147 L. Ed. 2d 502 (2000).

law. Each published appellate case does not exist solely to point out that a law has been struck down, but to point out **why** the law was struck down, to prevent future equally unconstitutional government action.

Here, the "why" the law was unconstitutional is because political parties have the right of freedom of association, which comes with it a "right not to associate".[20]  This broader concept is echoed throughout all the cases cited, especially including but not limited to <u>Jones</u> and <u>Duke</u>, and makes it clearly established to any reasonable government official that they aren't permitted to force a political party to associate with candidates that it does not want to associate with.

And by making the decision to force that association, Defendants are liable to Plaintiffs.

Defendants attempt to ignore the reality of this legal framework by essentially claiming that O.C.G.A. § 21-2-153, a state law, can authorize the violation of a political party's rights and anyone acting based on that statute is entitled to immunity. This, of course, misreads 42 U.S.C. § 1983, as the creation of a state, county, or city ordinance does not allow individuals to violate peoples'

---

[20] "That is to say, **a corollary of the right to associate is the right not to associate.** " 'Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." <u>California Democratic Party v. Jones</u>, 530 U.S. 567, 574, 120 S. Ct. 2402, 2408, 147 L. Ed. 2d 502 (2000).

rights until that specific law is examined by a court. Federal courts have examined

the constitution and created caselaw that recognizes clearly established rights, such

as Freedom of Speech and Freedom of Association, and those established rights are

still established, even if laws are later created by states that violate those rights, or

actions are taken by government actors that violate those rights.

Furthermore, while Defendants attempt to claim that California Democratic

Party v. Jones allows the State to require primaries to be used, that is not at issue in

this case. The Plaintiffs seek to not associate with certain candidates in their

party's primary, which is a right that has been clearly established by Duke and

pointed out in the Eleventh Circuit Order.

Assuming arguendo that the dicta in California Democratic Party v. Jones is

persuasive, the case cited in that dicta, American Party of Tex. V. White, does not

claim that the State has the power to control primaries, but actually states that it is

plain the State can require that intraparty competition be settled before the general

election "…by primary election **or by party convention**".[21] So this gives two

options, and it does not give the State the power to control which candidates are

eligible to associate with a party in its primary.

Which is natural, given the fact that a party has a right to not associate with

those it does not agree with, such as David Duke.

---

[21] American Party of Tex. V. White, 415 U.S. 767, 781 (1974).

Finally, assuming *arguendo* that either claim for monetary damages fails due to qualified immunity, even in spite of the extensive case law establishes that parties have had, for a very long time, a clear right to freedom of association when it comes to candidates, speech, and party activities, it would still not be grounds to dismiss Plaintiffs' Complaint.

This is because claims for declaratory and injunctive relief for the First Amendment claims, all claimed in Plaintiffs' Complaint, are not subject to qualified immunity.[22] The Defendants are still liable for violating the Plaintiffs' rights.

### c. Absolute Immunity Does Not Apply Because Defendants Were Neither Judges Nor Engaged in a Judicial Function, Their Actions Were Administrative in Nature, and Absolute Immunity Does Not Preclude Injunctive and Declaratory Relief

Defendants cite no caselaw that would lead to the conclusion that non-judges, specifically Defendant election board members, would receive absolute immunity for their decisions or actions. Furthermore, this conflicts with Defendants' earlier legal citations regarding the availability of *Monell* claims against policymakers.

---

[22] <u>Pearson v. Callahan</u>, 555 U.S. 223, 242 (2009); <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 841 (1998); <u>Behrens v. Pelletier</u>, 516 U.S. 299, 312 (1996).

In the case at bar, Defendants, acting as policymakers and/or administrators, made a decision and took actions to place Independent Candidates on the Republican Primary ballot.

Placing and keeping these candidates on the Republican ballot harmed Plaintiffs, and continues to harm Plaintiff, violating Plaintiffs' rights to freedom of association (and non-association) with the Independent Candidates.

Defendants' arguments amount to a series of distractions: claiming that all the unconstitutional actions were at the behest of other entities (which are not a bar to these claims against these Defendants), and then claiming that the Defendants were actually acting as judges in their unconstitutional decision to place Independent Candidates on the ballot. And, as stated previously, no other entity has dealt with the affirmative 42 U.S.C. § 1983 federal constitutional claims that have been brought by Plaintiffs in this action.

In contrast, while there is no supporting caselaw for Defendants' proposition that the Defendants were acting as judges, even if it was true, Defendants would **still** be liable under 42 U.S.C. § 1983, because even judges are subject to declaratory[23] and injunctive relief, as it was never intended that judges could be fully immune from violations of citizens' rights.[24]

---

[23] As explicitly recognized in 42 U.S.C. § 1983
[24] Pulliam v. Allen, 466 U.S. 522 (1984).

## <u>CONCLUSION</u>

For the above captioned reasons, Defendants' Motion should be denied,

again.

/s/ Jordan Johnson
Jordan Johnson
Georgia State Bar No. 673643
Catherine Bernard
Georgia Bar No. 505124
Attorneys for Plaintiffs

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Catherine@Justice.Law

/s/ David E, Oles (by Jordan Johnson, with express permission)
David E. Oles
Georgia Bar No. 551544
Attorney for Plaintiffs

5755 North Point Parkway
Ste 25
Alpharetta, GA 30022
770-753-9995
davidsr@deoleslaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been

prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point type

face.

<u>/s/ Jordan Johnson</u>
Jordan Johnson
Georgia State Bar No. 673643

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| CATOOSA COUNTY REPUBLICAN PARTY, and JOANNA HILDRETH | ) ) ) | |
| *Plaintiffs,* | ) ) | CIVIL ACTION FILE NO. 4:24-CV-00095-WMR |
| v. | ) ) | |
| CATOOSA COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION, and TOMMY DAVIS, RON MCKELVY, NINA CRAWFORD, MARVIN CORNELISON, Each in their individual and official Capacities as Members of the Catoosa County Board of Elections and Voter Registration, and TONYA MOORE, as director of the Board Of Elections and Voter Registration | ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that the foregoing Plaintiffs' **Response to Defendants' Second Motion to Dismiss** has been submitted to the Clerk of Court using the CM/ECF e-filing system and served upon Defendants' counsel of record.

This 7th day of August, 2025.

/s/ Jordan Johnson
Jordan Johnson

Georgia State Bar No. 673643
Catherine Bernard
Georgia Bar No. 505124
Attorneys for Plaintiffs

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Catherine@Justice.Law