**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| CATOOSA COUNTY REPUBLICAN PARTY and JOANNA HILDRETH, *Plaintiffs,* v. CATOOSA COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION, *et al.,* *Defendants.* | Civil Action File No.: 4:24-cv-00095 |

**BRIEF IN SUPPORT OF SECRETARY RAFFENSPERGER'S
MOTION TO DISMISS**

## I.     INTRODUCTION

Brad Raffensperger, in his official capacity as the Secretary of State of the State of Georgia, respectfully requests that this Court dismiss him from the suit or, in the alternative, dismiss the action altogether. The Eleventh Amendment bars this suit against the Secretary, who has been named only in his official capacity to comply with *Ex parte Young*, 209 U.S. 123 (1908). [*See* Doc. 50 at 2 n1.] However, the Court need not even reach whether *Ex parte Young* applies because "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101–02

1

(1984). Nevertheless, *Ex parte Young* is inapplicable here because the Secretary has no role in qualifying any political party candidates at the county level or in adjudicating qualification challenges for county-level candidates. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999) ("[U]nless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate."). For a similar reason, Plaintiffs do not have standing to bring a claim against the Secretary because they have failed to allege that their alleged injuries are at all traceable to or redressable by the Secretary, since he has no "authority to enforce the particular provision" that Plaintiffs have challenged. *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021).

The lack of jurisdiction over the Secretary specifically notwithstanding, this action as a whole should be dismissed as moot. The allegations of the suit focus entirely on the inclusion of certain candidates on the May 2024 Catoosa County primary ballot. However, not only has the primary election passed, so too has the general election. Thus, the Court can no longer provide meaningful relief to Plaintiffs. *See Graham v. Att'y Gen., State of Georgia*, 110 F.4th 1239, 1244 (11th Cir. 2024). And although Plaintiffs allege that voting will again occur this year, they have not alleged that they will seek to disqualify or otherwise not associate with any candidates for county positions

2

for this or any future primary in Catoosa County. They also have not alleged any reasonable or non-speculative expectation that they will face the purportedly unlawful action of having candidates placed on the Republican primary ballot with whom Plaintiffs wish not to associate in any future election and thus cannot satisfy the test for the "capable of repetition, yet evading review" exception to mootness. *See id.* at 1246.

Finally, should the Court proceed to the merits of the case, Plaintiffs fail to state a claim that O.C.G.A. § 21-2-153(b) is unconstitutional either facially or as-applied. O.C.G.A. § 21-2-153(b) plainly has constitutional applications and thus is not facially invalid. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). Further, even under Plaintiff's as-applied challenge, O.C.G.A. § 21-2-153(b) poses only a reasonable, nondiscriminatory restriction on Plaintiffs' limited associational rights, and the State can easily justify the restriction because it has important regulatory interests in conducting fair and honest elections, which includes ensuring every candidate who meets the procedural rules set forth by the political party has a fair chance of appearing on the ballot.

## II.    LEGAL STANDARDS

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) where the district court lacks subject-matter jurisdiction over a claim. Federal courts are courts of limited jurisdiction. *See Kokkonen v.*

*Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]" *Smith v. Gte Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citations omitted). A defendant may challenge subject-matter jurisdiction facially or factually. *See Douglas v. United States*, 814 F.3d 1268, 1274–75 (11th Cir. 2016). A facial attack requires the court to examine the complaint, taking its allegations as true, to determine whether the plaintiff has established that the court has jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Questions of Eleventh Amendment immunity, standing, and mootness are all jurisdictional issues. *See Fair Fight Action, Inc. v. Raffensperger*, 413 F.Supp.3d 1251, 1262 (N.D. Ga. 2019).

A complaint must also be dismissed if it fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges sufficient facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court must "take the factual allegations in the complaint as true and construe them in the light

4

most favorable to the plaintiffs," but the Court is not required to accept allegations that are merely legal conclusions. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

## I.    ARGUMENT

### A.    The Eleventh Amendment bars this suit against the Secretary.

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Amendment not only bars suits against a state by citizens of another state, but also applies equally to suits against a state initiated by that state's own citizens." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). Thus, "the states, as sovereigns, enjoy immunity from lawsuits brought against them without their consent." *Williams v. Bd. of Trs. of Univ. of Alabama*, 128 F.4th 1208, 1214 (11th Cir. 2025).

There are certain exceptions to the grant of sovereign immunity under the Eleventh Amendment. A state may waive sovereign immunity, or Congress may abrogate its immunity under section 5 of the Fourteenth Amendment. *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). Neither

is true here. *See* Ga. Const. art. I, § 2, ¶ IX ("No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution."); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990) ("Congress has not abrogated eleventh amendment immunity in section 1983 cases.").

There is also an exception under the *Ex parte Young* doctrine for "suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." *Summit Med. Assocs., P.C.*, 180 F.3d at 1336 (emphasis in original). Under that "legal 'fiction,'" state officers who "enforce state laws in derogation of the Constitution" are without any immunity protection. *Id.* at 1336–37.

However, "[l]awsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" *Carr*, 916 F.2d 1521, 1524 (11th Cir. 1990) (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984)). "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101 (punctuation and citation omitted). In that case, "as when the State itself is named as the defendant, a

6

suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id.* at 101–02.

That is precisely the situation here. Plaintiffs seek that any decree of this Court operate against the State of Georgia, rather than the Secretary of State. [Doc. 50 ¶ 85 (seeking the Court to enter an "injunction prohibiting the enforcement of any law … or any other action by any arm or subdivision of Defendant State of Georgia…"); *id.* at 2 (naming Defendant State of Georgia "through Secretary of State, in charge of elections, Brad Raffensperger.").] And although Plaintiffs invoke *Ex parte Young*, [*see* Doc. 50 at 2 n.1], it is clear that *Ex parte Young* is inapplicable here. "[U]nless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate. Only if a state officer has the authority to enforce an unconstitutional act in the name of the state can the Supremacy Clause be invoked to strip the officer of his official or representative character and subject him to the individual consequences of his conduct." *Summit Med. Assocs., P.C.*, 180 F.3d at 1341.

Georgia law does not prescribe any role for the Secretary of State in the qualification of political party candidates at the county level or in qualification challenges for prospective county candidates. Under Georgia law, candidates for political parties are qualified by the county and state executive committees of each political party, or by the election

7

superintendent if the political party has not designated a party official with whom candidates for county elective offices should qualify at least 14 days before the qualifying period begins. O.C.G.A. § 21-2-153(c), (d)(1). Similarly, for candidates for county office, "the superintendent shall determine if the candidate is qualified to seek and hold the public office for which such candidate is offering" upon receipt of a challenge to the candidate's qualifications. *Id.* § 21-2-6(c). While the Secretary may have previously had some connection with the duty of enforcement of Georgia election code provisions, *see Grizzle*, 634 F.3d at 1319, that was dependent on the Secretary's position as chairman of the State Election Board, which purportedly gave him both "the power and the duty to ensure that the entities charged with those responsibilities comply with Georgia's election code in carrying out those tasks." *Id.* That is no longer the case; the chairperson of the State Election Board is now a specifically designated position, not the Secretary of State. O.C.G.A. § 21-2-30.

Thus, the Eleventh Amendment bars this suit against the Secretary because it is, in effect, a suit against the State, and no exception to the Eleventh Amendment applies. Accordingly, the Court should dismiss the Secretary—and the State—from this suit.

8

## B.   Plaintiffs lack standing to bring a claim against the Secretary.

Even if the Secretary is not entitled to sovereign immunity, Plaintiffs still do not have standing to bring a claim against the Secretary. Under Article III of the United States Constitution, federal courts are limited in jurisdiction to only "cases" and "controversies." *City of South Miami v. Governor*, 65 F.4th 631, 636 (11th Cir. 2023). "To have a case or controversy, a litigant must establish he has standing, which requires proof of three elements." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citation and punctuation omitted). "The litigant must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "And when plaintiffs seek prospective relief to prevent future injuries, they must prove that their threatened injuries are 'certainly impending.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)).

While Plaintiffs may have sufficiently pled an injury in fact, *see Catoosa Cnty. Republican Party v. Catoosa Cnty. Bd. of Elections & Voter Registration*, No. 24-12936, 2025 WL 1662455, at *4 (11th Cir. June 12, 2025), Plaintiffs have failed to allege that their identified injuries are traceable to the Secretary of State or that those injuries are likely to be

9

redressed by a favorable decision against the Secretary. "When traceability and redressability are at stake, the key questions are who caused the injury and how it can be remedied." *City of South Miami*, 65 F.4th at 640. These two requirements "often travel together[.]" *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021). "[W]here, as here, a plaintiff has sued to enjoin a government official from enforcing the law, he must show, at the very least, that the official has the authority to enforce the particular provision that he has challenged, such that an injunction prohibiting enforcement would be effectual." *Id.*

"To establish Article III standing, the plaintiff must show a causal connection between its injury and the challenged action of the defendant, as opposed to the action of an absent third party." *City of South Miami*, 65 F.4th at 640 (citation and punctuation omitted). "Similarly, the plaintiff must show that it is likely, not merely speculative, that a favorable judgment will redress its injury." *Id.* (citation and punctuation omitted).

Plaintiffs allege here that their First Amendment right of association and freedom of speech were violated because certain candidates were included as Republican candidates for countywide offices on the May 2024 primary ballot.[1] [*See* Doc. 50 ¶¶ 80–81.] To that end, Plaintiffs seek a

---

[1] Plaintiffs specifically incorporate only their allegations regarding the inclusion of those candidates on the ballot against the State of Georgia vis-à-

declaration that "any provision[] of Georgia law, including but not limited to O.C.G.A. § 21-2-153" is unconstitutional "to the extent that it forces Plaintiffs … to associate with candidates not of [their] explicit choosing[.]" [*Id.* ¶ 84.] They also seek an injunction "prohibiting the enforcement of any law, court order, administrative action, or any other action by any arm or subdivision of Defendant State of Georgia that forces the Plaintiffs … to associate with candidates not of said political group's explicit choosing." [*Id.* ¶ 85.]

But, as discussed previously, the Secretary of State has no role in the qualification of county candidates for any political party, which are handled by the county executive committee, O.C.G.A. § 21-2-153(d)(1), or in qualification challenges for prospective county candidates, which are handled by superintendents. *Id.* § 21-2-6(c). Neither is "subject to the Secretary's control." *Jacobson*, 974 F.3d at 1253. "Superintendent" is specifically defined in Georgia law to mean the county boards of elections. *See id.* § 21-2-2(35)(A). The Georgia General Assembly creates boards of elections. *Id.* § 21-2-40. They are funded by the county or municipality in which they exist. *Id.* § 21-2-71. Political parties are even further removed from the Secretary. *See id.* § 21-2-111(a) (requiring each political party to create executive committees which

---

vis the Secretary, and not their allegations regarding the exclusion of certain ballot questions. [Doc. 50 ¶ 81.] This Court has already recognized that "[t]he authority to omit ballot questions solely belonged to the [Catoosa County Board of Elections and Voter Registration]." [Doc. 51 at 30.]

11

exercise control over party affairs); *id.* § 21-2-153(b) ("[A]ll candidates for party nomination in a … county primary shall qualify as such candidates in accordance with the procedural rules of their party[.]").

"Because the Secretary didn't do (or fail to do) anything that contributed to their harm, [Plaintiffs] cannot meet Article III's traceability requirement." *Jacobson*, 974 F.3d at 1253 (citing *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019)) (punctuation omitted). Consequently, there is no order the Court can issue against the Secretary that can remedy Plaintiffs' alleged harm. *See Lewis*, 944 F.3d at 1301 ("[I]t must be the *effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly.") (emphasis in original) (punctuation and citation omitted). An injunction against the Secretary "ordering [him] not to follow" provisions of Georgia law related to qualifying candidates for political parties "cannot provide redress, for neither [he] nor [his] agents control" who is qualified to run as a candidate for any political party. *Jacobson*, 974 F.3d at 1254. Accordingly, Plaintiffs have not alleged they have standing to bring a claim against the Secretary.

## C. The action is moot.

As with standing, the doctrine of mootness derives from the Article III prescription that federal courts are limited to deciding cases and controversies. "[A]n action that is moot cannot be characterized as an active

12

case or controversy." *Graham v. Att'y Gen., State of Georgia*, 110 F.4th 1239, 1244 (11th Cir. 2024) (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001)). "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.* (citing *Wood v. Raffensperger*, 981 F.3d 1307, 1316 (11th Cir. 2020)). An action may become moot during the pendency of the case *Id.*

Here, the allegations in Plaintiffs' complaint, as incorporated against the Secretary, focus only on the May 2024 Republican primary election in Catoosa County for county-wide offices. [*See, e.g.*, Doc. 50 ¶¶ 12, 19, 28–30.] Plaintiffs' requested relief similarly is limited to that election. [*See id.* ¶¶ 74–75 (seeking, *inter alia*, that specific candidates be removed from primary ballot).] Both the primary and the general elections for those county positions have passed. Thus, the Court can no longer provide meaningful relief to Plaintiffs as to the May 2024 Republican primary in Catoosa County. *See Graham*, 110 F.4th at 1244 (challenge to leadership committee campaign finance law by Libertarian candidate for lieutenant governor in 2022 rendered moot by general election because "the issue of the 2022 campaign" was no longer live controversy and court could not provide meaningful relief as to 2022 election); *see also Wood*, 981 F.3d at 1317 ("We cannot turn back the clock and create a world in which the [] election results are not certified." (quotations omitted)).

13

True, Plaintiffs also allege that "[p]rimaries are scheduled again for this year, similar issues are likely to arise, and immediate action is necessary to prevent potential voter confusion and irreparable harm to Plaintiffs," [Doc. 50 ¶ 31], and that "voting again will be occurring on May 19, 2026[.]" [*Id.* ¶ 70.] But Plaintiffs fail to allege that they will seek to disqualify, or otherwise not associate with, any candidates for county positions in the May 2026 primary in Catoosa County, or any other primary in the future. "Without any concrete allegations about the [Party's] intentions for future elections in the complaint itself, the case as presented … fails to present a 'live controversy with respect to which the court can give meaningful relief.'" *Graham*, 110 F.4th at 1245 (citing *Wood*, 981 F.3d at 1316).

There are exceptions to the mootness doctrine, one of which is for cases that are "capable of repetition, yet evading review." *Hall v. Sec'y, Ala.*, 902 F.3d 1294, 1297 (11th Cir. 2018) (citation omitted). This exception is "narrow" and "applies only in exceptional situations." *Al Najjar*, 273 F.3d at 1336. It is limited to situations where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Hall*, 902 F.3d at 1297 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)) (punctuation omitted). To satisfy the same complaining party rule, "there must be some reasonable, non-

speculative expectation that the allegedly unlawful action will recur."

*Graham*, 110 F.4th at 1246 (punctuation and citation omitted).

Here, as alleged by Plaintiffs, the unlawful action was the inclusion of certain candidates as Republican candidates on the ballot for the May 2024 primary election, both on March 8, 2024 when an individual working for the county superintendent "executed paperwork listing the [candidates] as being qualified as Republicans," [Doc. 50 ¶ 19]; and on April 2, 2024 when the superintendent "voted 4-1 … to not remove the [candidates] from the Republican ballot and for them to be qualified as Republicans." [*Id.* ¶ 28.] Plaintiffs, however, note that there was a valid court order existing at the time that may have prompted Defendant Moore to qualify those candidates, [*id.* at 8 n.5], which then subjected the candidates to qualification challenges to be heard by the county superintendent. *See* O.C.G.A. § 21-2-6(b).

Thus, Plaintiffs would have to allege that they have some "reasonable, non-speculative expectation" that they plan to refuse to qualify another candidate for a county position as a member of their party, and that the superintendent would qualify those candidates against their wishes, either by its own choice or by court order. *See Graham*, 110 F.4th at 1246. But Plaintiffs have not alleged so. Nor could they. The qualifying period for candidates for county offices in the 2026 midterm election has come and gone, *see* O.C.G.A. § 21-2-132(d)(3), and Plaintiffs have not amended their

15

complaint to include allegations that they refused to qualify a candidate for any county position. In fact, the Secretary of State has already published the names of all GOP candidates who have qualified to run in the 2026 primary for a county position,[2] and Plaintiffs do not appear to have challenged or filed suit to stop the qualification of any candidate. Thus, "the possibility of a recurrence is purely theoretical." *Graham*, 110 F.4th at 1246 (quoting *Wood*, 981 F.3d at 1318). Accordingly, this case does not fall under the mootness exception.

### D.    Plaintiffs fail to state a claim upon which relief may be granted.

Generally, where a challenged law "burdens a fundamental constitutional right, then the law can survive only if the State demonstrates that the law advances a compelling interest and is narrowly tailored to meet that interest." *Duke v. Cleland*, 954 F.2d 1526, 1529 (11th Cir. 1992). "In ballot access cases, however, the Supreme Court has often deviated from the

---

[2] *See Qualifying Candidate Information*, Sec'y of State, https://mvp.sos.ga.gov/s/qualifying-candidate-information (listing all GOP candidates who qualified for the May 13, 2026 primary election).

The Court may take judicial notice of the Secretary of State's website for the limited fact that the names of candidates who have qualified to run in the May 13, 2026 primary election have already been disclosed publicly without converting the Secretary's motion to dismiss to a motion for summary judgment. *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

16

strict scrutiny model of analysis," *id.*, instead replacing it with the more flexible *Anderson-Burdick* test. *See Duke v. Cleland*, 5 F.3d 1399, 1404-05 (11th Cir. 1993).

Under the *Anderson-Burdick* test, "[a] court considering a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). If the challenged statute severely burdens the plaintiff's First and Fourteenth Amendment rights, then the "regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788). "Lesser burdens [ ] trigger less exacting review[.]" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

O.C.G.A. § 21-2-153 sets forth the procedure by which candidates "for any party nomination in a state or county" may qualify to run in elections. O.C.G.A. § 21-2-153(a). O.C.G.A. § 21-2-153(b) governs how prospective partisan candidates qualify as candidates of their party.[3] [*See* Doc. 50 ¶ 40.] Under O.C.G.A. § 21-2-153(b), "all candidates for party nomination in a … county primary shall qualify as such candidates in accordance with the procedural rules of their party," and "no person shall be prohibited from qualifying for such office if he or she … [m]eets the requirements of such procedural rules; … and [i]f the party rules so require, affirms his or her allegiance to his or her party by signing" an oath of allegiance to the party.[4] Georgia law permits "[t]he respective county executive committees of each political party [to] formulate, adopt, and promulgate rules and regulations, consistent with law and the rules and regulations of the state executive committee, governing the conduct of conventions and other party affairs"

[3] O.C.G.A. § 21-2-153(e) adds another procedural requirement for candidates for party nomination. Under subsection (e), candidates must also file an affidavit with the political party at the time of qualification that includes certain biographical or factual information about the candidate. That subsection does not appear to be at issue in this case. Nor do the other provisions in O.C.G.A. § 21-2-153 govern where, when, and to whom qualifying should take place, which do not implicate Plaintiffs' concerns about being required to associate with certain candidates for office. *See, e.g.*, O.C.G.A. § 21-2-153(c)(1) (prescribing dates of qualifying period).
[4] The other provisions of subsection (b) do not appear to be at issue here.

within the county. O.C.G.A. § 21-2-111(c). *See also id.* § 21-2-111(a) (county executive committee exercises county-wide jurisdiction).

Plaintiffs challenge O.C.G.A. § 21-2-153 and other unspecified statutes that purportedly "require the Plaintiffs to be associated with candidates for office that it does not wish to associate with or share its values," [Doc. 50 ¶¶ 80–81], thus infringing on their First Amendment rights. [*Id.* ¶ 81.] Plaintiffs' theory appears to be that, by specifying that no candidate shall be prevented from qualifying if they adhere to the party's *procedural* rules, the statute then prohibits the county executive committee from establishing rules that prescribe a process for preapproval of county candidates on *substantive* grounds, over and above an affirmation of the candidate's allegiance to the party. However, O.C.G.A. § 21-2-153(b) survives both a facial and as-applied constitutional challenge.

### 1.    O.C.G.A. § 21-2-153(b) is not facially unconstitutional.

Plaintiffs, at the Court's order, raise a facial challenge of O.C.G.A. § 21-2-153(b). [Doc. 50 ¶¶ 78–79.] "[A] plaintiff can only succeed in a facial challenge by 'establishing that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (punctuation omitted). Thus, "a facial challenge must fail

where the statute has a plainly legitimate sweep." *Id.* (citation and punctuation omitted). "[W]hen a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007).

It is clear that O.C.G.A. § 21-2-153(b) and the statutory scheme for candidate qualification generally can be applied in a constitutional manner. Take, for example, a situation where a county executive committee has decided to qualify only three candidates for the county Republican primary ballot because it has arbitrarily decided three is a sufficient number of candidates. In that case, the county executive committee's failure to qualify a fourth candidate who has otherwise followed the procedural rules of the party only minimally implicates, if at all, the committee's right not to associate with a particular candidate. In contrast, ensuring that all candidates who are fairly qualified in accordance with the rules of their own party appear on the ballot with sufficient time to conduct the election is a significant State interest. *See Duke v. Massey*, 87 F.3d 1226, 1234 (11th Cir. 1996) ("Duke III") (State has "significant interest in structuring and regulating elections in order to facilitate order, honesty and fairness[.]"); *see Timmons*, 520 U.S. at 364 ("States certainly have an interest in protecting the integrity, fairness,

20

and efficiency of their ballots and election processes as means for electing public officials.").

Thus, it would be plainly constitutional under *Anderson-Burdick* to apply O.C.G.A. § 21-2-153(b) in that circumstance and require the county executive committee to qualify the candidates that otherwise met the procedural rules of the party. Accordingly, because O.C.G.A. § 21-2-153(b) has a legitimate sweep, it is not facially invalid.

### 2. O.C.G.A. § 21-2-153(b) also survives an as-applied challenge.

Plaintiffs assert that they have a right "to not associate with candidates that do not reflect the party's political positions or values." [Doc. 50 ¶ 10.] The Eleventh Circuit stated that the county-level political party "also enjoy[s] the right to freedom of association and the right to identify those who constitute the local party based on political beliefs." *Catoosa Cnty. Republican Party*, No. 24-12936, 2025 WL 1662455, at *4. However, Plaintiffs' interest in not associating with certain candidates they view as not reflective of "the party's political positions or values" is not as powerful as Plaintiffs contend, simply because Plaintiffs have limited authority to determine what the "*party's* political positions or values" are. [Doc. 50 ¶ 10 (emphasis added).]

21

To be sure, the Supreme Court recognized that state laws that regulate "parties' internal affairs and structure," *Timmons*, 520 U.S. at 360, are "substantial intrusion[s] into the associational freedoms of [the political parties]." *Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 126 (1981). The Supreme Court has held that "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee." *California Democratic Party v. Jones*, 530 U.S. 567, 575 (2000). *See Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 225 (1989) (political party has right to "select a standard bearer who best represents the party's ideologies and preferences").

However, the considerations that make intrusions into a statewide or national political party's internal processes so burdensome are simply not present on the county level. As the Supreme Court recognized, "the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions—thus impairing the party's essential functions—and that political party may accordingly protect themselves 'from intrusion by those with adverse political principles.'" *La Follette*, 450 U.S. at 122 (quoting *Ray v. Blair*, 343 U.S. 214, 221–22 (1952)). That potential distortion and impairment of the party's essential functions is not as prevalent at the county level here because, while the county executive committee has county-wide jurisdiction over party affairs, it still remains subject to the control and

22

direction of the *statewide* committee. *See, e.g.*, O.C.G.A. § 21-2-111(c) (county executive committee shall promulgate rules "consistent with the law and rules and regulations of the state executive committee"); *Id.* § 21-2-112(e) (state executive committee has authority to suspend powers and duties of county committee). It is the statewide contingent of the political party that then directs the party's collective actions. *See Duke III*, 87 F.3d at 1234 (three committee members who determined unanimously to strike Duke from presidential preference primary candidate list were state party leaders and "entrusted with the authority to make decisions for the party").

To that end, it is not clear whether the county executive committee can require candidates to follow their county-specific rules to be qualified at all. As defined and used in the Georgia election code, "political party" or "party" refers to the "political organization" itself. *See* O.C.G.A. § 21-2-2(25). It is the political party that then establishes the county executive committee. *Id.* § 21-2-111(a). O.C.G.A. § 21-2-153(b) only requires that the procedural rules of the "party" be met. Thus, even if Plaintiffs, as the county branch of the political party, had the same associational rights as its statewide counterpart, O.C.G.A. § 21-2-153(b) does not infringe upon that right at all. It also already requires potential candidates to affirm their allegiance to the political party, if so required by the party's rules. *Id.* § 21-2-153(b)(4).

Thus, even assuming that O.C.G.A. § 21-2-153(b) bars Plaintiffs from adding additional ideological or substantive requirements to qualify as a member of the Catoosa County GOP over and above the candidate's oath of allegiance, Plaintiffs cannot show how that imposes more than a "reasonable, nondiscriminatory restriction" on their right to not associate with certain candidates, which is less strong than the state party's associational rights. O.C.G.A. § 21-2-153(b) does not prohibit Plaintiffs from utilizing other methods to distinguish themselves from candidates they do not wish to be associated with. For example, the statute does not prevent Plaintiffs from running advertisements or otherwise providing educational literature to its constituents informing them that Plaintiffs have chosen not to associate with a particular candidate.

Because the burden on Plaintiffs' rights is not severe, the law may be justified by "the state's important regulatory interests," *Anderson*, 460 U.S. at 788, especially where, as here, the purported "impingement" of associational rights occurs "at the ballot box," since the State has the power to regulate the time, place, and manner of elections. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986). As discussed above, the State has important interests in protecting the integrity, fairness, and honesty of its elections by ensuring that candidates who otherwise meet the procedural rules of their party can appear on the ballot. *See Eu*, 489 U.S. at 231 ("[A]

24

State may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are fair and honest."). O.C.G.A. § 21-2-153(b) satisfies those interests by ensuring that every candidate who meets the procedural rules of their party—defined in Georgia law as the political organization itself—is placed on the ballot. Accordingly, even in an as-applied challenge, O.C.G.A. § 21-2-153(b) withstands constitutional scrutiny.

*    *    *

For the foregoing reasons, the Court should dismiss the Secretary of State from this action, or dismiss the Amended Complaint as a whole for lack of jurisdiction or failure to state a claim.

Respectfully submitted this 7th day of April, 2026.

CHRISTOPHER M. CARR    112505
Attorney General

BRYAN K. WEBB    743580
Deputy Attorney General

ELIZABETH T. YOUNG    707725
Senior Assistant Attorney General

*/s/ Danna Yu*
DANNA YU    846403
Assistant Attorney General

*Counsel for Defendant Brad Raffensperger in his official capacity as Secretary of State for the State of Georgia*

25

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(C).

/s/ *Danna Yu*
DANNA YU                    846403
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **BRIEF IN SUPPORT OF SECRETARY RAFFENSPERGER'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

This 7th day of April, 2026.

/s/ Danna Yu
DANNA YU                        846403
Assistant Attorney General