UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| CATOOSA COUNTY REPUBLICAN PARTY, and JOANNA HILDRETH<br><br>*Plaintiffs,*<br><br>v.<br><br>CATOOSA COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION, and TOMMY DAVIS, RON MCKELVY, NINA CRAWFORD, MARVIN CORNELISON, Each in their individual and official Capacities as Members of the Catoosa County Board of Elections and Voter Registration, TONYA MOORE, as director of the Board Of Elections and Voter Registration, Brad Raffensperger In his official capacity as Secretary of State of the STATE OF GEORGIA, and Brian Kemp in his official capacity as Governor of the STATE OF GEORGIA<br><br>*Defendants.* | ) | CIVIL ACTION FILE NO.<br><br>4:24-CV-00095-WMR |

**PLAINTIFFS' BRIEF IN RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS**

Plaintiffs hereby respond to State Defendants' Motion to Dismiss, showing the Court as follows:

Plaintiffs bring this action under 42 U.S.C. § 1983 for violations of their rights secured by the First Amendment. As relevant to the present Motion, Plaintiffs seek prospective declaratory and injunctive relief against Defendants Brad Raffensperger, in his official capacity as Secretary of State of Georgia, and Brian Kemp, in his official capacity as Governor of Georgia (collectively, the "State Defendants"), to prevent continuing and recurring violations of federal constitutional law. Plaintiffs do not seek monetary damages from the State Defendants in their official capacities.

Plaintiffs separately seek damages and other appropriate relief against the remaining Defendants as pleaded in the operative Complaint. Plaintiffs seek declaratory relief, injunctive relief, and monetary damages as well as attorneys' fees for the other Defendants' violation of their constitutional rights under 42 U.S.C. § 1983.[1]

Specifically, Plaintiffs allege that Defendants violated Plaintiffs' First Amendment rights by (1) Allowing a number of non-Republican candidates, that the Plaintiffs have taken all steps possible to not associate with, to be on the Republican primary ballot, and (2) Refusing to place mandatory ballot questions,

---

[1] *See* Complaint.

submitted by the Plaintiffs, on the Republican primary ballot due to the content of the questions.

Plaintiffs filed a Verified Complaint[2] laying out the factual history and details of the claims, and Plaintiffs requested an emergency injunction which was heard on or about April 17, 2024.[3] That request was denied, leaving Plaintiffs' harms continuing.

Plaintiffs filed an Amended Complaint[4] on January 20, 2026 in response to this Court's Order to add the State of Georgia as a Defendant.[5] [6]

This Court held a hearing on a previous Motion to Dismiss filed by Brad Raffensperger. The Court ordered Brian Kemp be served as well, and Plaintiffs have added him, and furthermore are contemporaneously filing proofs of service of all services on Brian Kemp or his office.

## I. STATE DEFENDANTS' THRESHOLD JURISDICTIONAL ARGUMENTS DO NOT WARRANT DISMISSAL

### A. Plaintiffs' Claims for Prospective Relief Fall Within Ex parte Young and Are Not Barred by the Eleventh Amendment

[2] *See* Verified Complaint (Doc 1).
[3] Id.
[4] *See* Amended Complaint (Doc 50).
[5] *See* Order (Doc 47) and Order on Motion for Joinder (Doc 52).
[6] Plaintiffs' arguments in this Brief are assuming, for the sake of argument, that Defendant State of Georgia is a necessary Defendant and that an as-applied challenge would fail.

Plaintiffs' Amended Complaint expressly seeks prospective declaratory and injunctive relief to stop continuing and recurring violations of the First Amendment.[7] Defendants disregard the basic concept of standing, and attempts to usurp federal constitutional protections by claiming that state law can somehow supersede the rights guaranteed by the United States Constitution.

42 U.S.C § 1983 states that

> "Every person who, under **color of any statute, ordinance, regulation, custom, or usage, of any State or Territory** or the District of Columbia, **subjects, or causes to be subjected**, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any **rights**, privileges, or immunities **secured by the Constitution and laws**, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…" (**Emphasis** added)

Here, and as shown by the cited cases throughout this brief, a political party organization is both considered a "person" for federal law purposes, and such a party has rights secured by the Constitution and laws. *California Democratic Party v. Jones*, 530 U.S. 567, 574–76, 120 S. Ct. 2402, 2408–09, 147 L. Ed. 2d 502 (2000). A political party has standing to receive redress for the violation of its rights.

[7] Doc 50 ¶ 31, 64–70, 74–85.

The Plaintiff Catoosa County Republican Party and its Chairperson were injured by having their "…right not to associate…"[8] violated, by being forced to associate with the Independent Candidates whom they have elected not to associate.

In the oft-ignored section of 42 U.S.C. § 1983, this is specifically contemplated and protected, as rights can be violated under the "regulation, custom, or usage of and State…" and there is liability.

Defendant State of Georgia attempts to claim that Brad Raffensperger and Brian Kemp are wrong parties to be a Defendant.

This is plainly contradicted by both public statements of Raffensperger, and by state law which states "The Secretary of State is designated as the chief state election official to coordinate the responsibilities of this state under the National Voter Registration Act of 1993 (P.L. 103-31) as required by 52 U.S.C. Section 20509."[9] Furthermore, Georgia code explicitly recognizes the Secretary of State as Georgia's "Chief Election Official", stating "(b) As the state's chief election official, the Secretary of State shall not serve in any fiduciary capacity for the campaign of any candidate whose election will be certified by the Secretary of

---

[8] California Democratic Party v. Jones, 530 U.S. 567, 575, 120 S. Ct. 2402, 2408, 147 L. Ed. 2d 502 (2000).

[9] O.C.G.A. § 21-2-210

State. Nothing in this subsection shall prohibit the Secretary of State from organizing and operating his or her own campaign for election to public office."[10]

### B. Secretary Raffensperger's Specific Statutory Election Duties Establish an Enforcement Connection, Traceability, and Redressability

The State Defendants' Eleventh Amendment argument overlooks the specific statutory responsibilities assigned to the Secretary of State. *Ex parte Young* permits an official capacity action seeking prospective relief to end an ongoing violation of federal law where the named official has the requisite connection to implementation or enforcement of the challenged law. Plaintiffs seek precisely such prospective federal relief from the State Defendants.

Georgia law does not merely confer upon the Secretary a general title or generalized supervisory responsibility. Among other specific statutory duties, the Secretary is required build, and review ballots for use by counties and municipalities on voting systems. The Secretary also determines forms of ballots and other election documents when required, and conducts training sessions for election superintendents.

Those duties directly concern the governmental instrument through which the alleged associational injury occurs: an official Republican primary ballot

[10] O.C.G.A. § 21-2-50

identifying self-described Republican candidates whom the Party has affirmatively rejected as ideologically outside its association. The Secretary's statutory responsibility to develop, program, build, and review county ballots is therefore materially different from a general obligation to enforce state law.

The Secretary correctly observes that he is no longer Chair of the State Election Board, and Plaintiffs therefore do not rely solely upon the authority there. But removal of one source of authority does not eliminate the ballot development, ballot review, and superintendent-training duties that Georgia law independently assigns to the Secretary.

Nor does the Defendant Catoosa County Board of Elections possessing final policymaking authority concerning the April 2, 2024 qualification decision establish that the Secretary has no legally relevant implementation role. More than one governmental actor may participate in creating, reviewing, approving, and implementing an election ballot.

Among other relief, Plaintiffs accordingly seek an injunction directed to the Secretary's own statutory responsibilities, preventing him from developing, programming, building, reviewing, approving, or otherwise implementing a Catoosa County Republican primary ballot in a manner that this Court ultimately

determines violates Plaintiffs' First Amendment rights. That prospective federal claim falls within *Ex parte Young*.

Some notable points of Georgia law which put responsibility upon Secretary of State Brad Raffensperger for relief include, but are not limited to, determining the forms of nomination petitions, ballots, and other forms the Secretary of State is required to determine under the chapter;[11] certifying to the proper superintendent official lists of all the political party candidates who have been certified to the Secretary of State as qualified candidates for the succeeding primary and to certify to the proper superintendent official lists of all the candidates who have filed their notices of candidacy with the Secretary of State, both such certifications to be in substantially the form of the ballots to be used in the primary or election. The Secretary of State shall add to such form the language to be used in submitting any proposed constitutional amendment or other question to be voted upon at such election;[12] and conducting training sessions at such places as the Secretary of State deems appropriate in each year for the training of registrars and superintendents of elections.[13]

[11] O.C.G.A. § 21-2-50(a)(1).
[12] O.C.G.A. § 21-2-50(a)(4).
[13] O.C.G.A. § 21-2-50(a)11).

Governor Kemp was added as a party following this Court's direction that the appropriate State officials be joined in connection with Plaintiffs' constitutional challenge to Georgia law. Plaintiffs have complied with that directive. The Governor has been added at the Order of the Court, and is clearly the executive officer in charge of laws being enforced. As the law being questioned is a law of the State of Georgia, and the constitutionality of the law is questioned, Defendant Kemp, as Governor, would be able to concede as to the unconstitutionality of attempting to use that law to force parties to allow certain candidates on the ballot.

In sum, Defendant State of Georgia attempts to claim that despite our insistence that Defendants cease ignoring the will of the Catoosa County Republican Party regarding ballot questions and primary candidates, that Defendant State of Georgia essentially has no power to enact or prevent these unconstitutional actions. This is contradicted by State law, as Defendant State of Georgia has significant control over the forms of ballots, verifying “official lists” and “certified lists” as well as conducting training sessions.

While Plaintiffs agree with Defendant State of Georgia that Defendant Catoosa County Board of Elections and Voter Registration could have done the right thing and followed the Plaintiffs’ determination of who is allowed to be associated with Plaintiffs, the State of Georgia could also prevent constitutional

violations from occurring. The State of Georgia, and specifically Secretary of State Brad Raffensperger, could be ordered to simply follow all determinations from the Catoosa County Republican Party regarding who appears on the Republican Party's primary ballot in Catoosa County. The State of Georgia, and Raffensperger in particular, could direct/train election boards to follow the actions of local parties, or could declare the statute in question facially unconstitutional.

### C. Plaintiffs' Claims Are Not Moot Because the Challenged Associational Injury Has Recurred and Is Capable of Repetition Yet Evading Review

The mootness argument fails because the Amended Complaint does not seek relief only for a concluded 2024 election. It expressly alleges continuing and likely recurring injury, pleads that primaries are scheduled again and that similar issues are likely to arise, and seeks forward-looking declaratory and injunctive relief against future forced association and future censorship of ballot questions.[14]

Defendant State of Georgia attempts to ignore the very public actions over the past months in Catoosa County.

Specifically, Defendant Catoosa County Board of Elections and Voter Registration removed numerous ballot questions based on their content from the

[14] Doc 50 ¶ 31, 64–70, 74–85.

Republican Primary ballot on Friday, March 13, 2026.[15] And the same Defendant decided to add a candidate to the primary ballot over the opposition of the Plaintiffs on April 17, 2026, despite the fact that this time, the candidate did not even submit the loyalty oath as required by state law or Republican Party rules.[16]

Finally, the Amended Complaint explicitly requests both for the statute to be struck down to the extent it burdens Plaintiffs' rights, and to enter and order prohibiting the future enforcement of any laws or court orders that violate Plaintiffs' rights of speech and association.

This is clearly for prospective injunctive and declaratory relief, not just retroactive. While Defendant State of Georgia claims that it would be "speculation" that it will happen again, not only has this Court previously recognized the potential for it to happen again during oral arguments, it actually **<u>has</u>** happened again during the pendency of Defendant's first Motion to Dismiss.

Additionally, while Defendant State of Georgia argues that somehow the party's relationship with O.C.G.A. § 21-2-153 in 2024 versus 2026 affects the mootness of the underlying claim(s), or creates a substantial differentiation in the claims, this is inaccurate.

---

[15] https://www.northwestgeorgianews.com/catoosa_walker_news/news/catoosa-elections-board-rejects-three-gop-ballot-questions/article_b8c8534f-3371-4737-9e6d-f0386c67c3a6.html

[16] https://www.instagram.com/p/DXQFdGojvkC/

In 2024, the Plaintiff, which is the Republican Party in Catoosa County, definitively did not want certain candidates qualified as Republicans, and based at least in part on O.C.G.A. § 21-2-153, the candidates were qualified anyway by and due to the Defendants, and placed on primary ballots controlled by and through the Defendants.

In 2026, the Plaintiff, which is the Republican Party in Catoosa County, definitively did not want a certain candidate qualified as Republican, and based at least in part on O.C.G.A. § 21-2-153, the candidate was qualified anyway by and due to the Defendants, and placed on primary ballots controlled by and through the Defendants.

Without judicial action, the Defendants will continue to violate Plaintiffs' rights by qualifying candidates as Republicans who are, in fact, not Republican. Election disputes are paradigmatic examples of controversies capable of evading complete review because candidate qualification, ballot preparation, absentee voting, and primary elections operate under compressed statutory schedules. This case itself demonstrates the point: neither the 2024 nor the 2026 controversy could be fully litigated through final appellate review before the respective primary ended. Both elements of the capable of repetition yet evading review doctrine are therefore satisfied.

### D. Rooker-Feldman Does Not Apply Because Plaintiffs Assert an Independent Federal Constitutional Claim and Do Not Seek Review or Rejection of the State Court Judgment

State Defendants' reliance on Rooker-Feldman misconstrues both Plaintiffs' claim and the narrow scope of that doctrine. Plaintiffs do not ask this Court to reverse, vacate, nullify, or otherwise exercise appellate review over the March 8, 2024 Superior Court order. Plaintiffs seek prospective relief against the enforcement of a statutory scheme and governmental actions that burden Plaintiffs' independent First Amendment right of association.

The Supreme Court has expressly distinguished between an impermissible federal appeal of a state-court judgment and a permissible independent federal challenge to the statute or rule governing that judgment.[17] "[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Id.* The fact that the same or a related question was previously considered by a state court does not eliminate federal jurisdiction over an independent federal claim.

Moreover, the constitutional injury alleged here cannot be reduced to the March 8 order. The Board subsequently exercised its own governmental authority on April 2, 2024, when it independently voted not to remove the Candidates. This

---

[17] Skinner v. Switzer, 562 U.S. 521, 532 (2011).

Court has already allowed the First Amendment associational claim based upon the April 2, 2024 vote to proceed. And in 2026, the same fundamental constitutional injury recurred without any state court judgment whatsoever. Plaintiffs' requested relief therefore does not require this Court to reverse any Superior Court judgment, but to recognize the constitutional injuries from Defendants' actions and state law.

## II. PLAINTIFFS PLAUSIBLY STATE A FIRST AMENDMENT ASSOCIATIONAL CLAIM

### A. The Eleventh Circuit Has Already Held that Plaintiffs Suffered a Cognizable First Amendment Injury

The Supreme Court and Eleventh Circuit have long recognized that a political party's right of association includes the right not to associate and the right to identify who constitutes the association.[18] The Eleventh Circuit has already held that those principles apply here in this very case.[19] And the Eleventh Circuit has already held that Plaintiffs plausibly alleged that the ballot questions at issue were private speech, not merely government speech.[20]

The Eleventh Circuit has already resolved a foundational issue that State Defendants repeatedly attempt to relitigate. The Court of Appeals held that

[18] Democratic Party of U.S. v. Wis. ex rel. La Follette, 450 U.S. 107 (1981); Tashjian v. Republican Party of Conn., 479 U.S. 208 (1986); Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214 (1989); Cal. Democratic Party v. Jones, 530 U.S. 567 (2000); Duke v. Massey, 87 F.3d 1226, (11th Cir. 1996).
[19] 11th Cir. Order at 8–10
[20] *Id.* at 12–15

Plaintiffs plausibly alleged a concrete injury to the Catoosa County Republican Party's First Amendment "associational right to exclude based on political beliefs.". The court specifically held that the constitutional principles governing political-party association apply to the Catoosa County Republican Party as a county-level party organization.

Of particular significance here, the Eleventh Circuit expressly rejected the proposition that Georgia law can negate the existence of the constitutional right merely by restricting the Party's authority under state law. Addressing O.C.G.A. § 21-2-153, the Court explained that even if Georgia law prevents the Party from excluding candidates for ideological reasons, that "simply shows that its right to freedom of association has been burdened. It does not negate the right."

State Defendants therefore cannot obtain dismissal merely by arguing that Georgia's statutory scheme assigns the ultimate qualification decision to governmental actors or limits the substantive criteria a county party may impose. If the statutory scheme requires Plaintiffs to associate as Republicans with candidates whom the Party has rejected based upon political beliefs, the Eleventh Circuit has already held that the resulting restriction constitutes a cognizable burden on Plaintiffs' First Amendment right. The remaining question is whether that burden is constitutionally justified, not whether the constitutional right exists.

### B. Georgia Law Expressly Recognizes the County Party's Independent Role in Party Affairs, Rulemaking, Candidate Qualification, and Certification

State Defendants' effort to minimize the legal status of the Catoosa County Republican Party is inconsistent with Georgia's Election Code itself. Georgia law does not treat a county political-party organization as an irrelevant appendage having no authority over county party affairs.

O.C.G.A. § 21-2-111(a) requires each political party to maintain "a county executive committee in each county in which it holds a primary," and expressly provides that the county executive committee exercises "county-wide jurisdiction and control over party affairs." The General Assembly separately directs that "respective county executive committees of each political party shall formulate, adopt, and promulgate rules and regulations" governing conventions and other party affairs within the county, and file them with the county.[21]

Georgia's candidate qualification statutes likewise assign county party organizations an express role. O.C.G.A. § 21-2-153(b) provides that candidates for party nomination in a state or county primary "shall qualify as such candidates in accordance with the procedural rules of their party." Subsection (c)(2) further provides that the county election superintendent qualifies candidates "on behalf of"

[21] . O.C.G.A. § 21-2-111(c).

the political party only if the party has failed timely to designate a party official in that county with whom its candidates are to qualify.[22] Subsection (d)(1) then requires the county executive committee to post the candidates who qualified with that committee.[23]

The certification statute continues the same structure. "The county executive committee of each political party shall certify to the superintendent" the candidates who qualified with that committee.[24] And, subject to the exceptions provided by statute, a candidate whose name does not appear on the list posted by the county or state executive committee "shall not be certified."[25]

Plaintiffs need not ask this Court to resolve every possible question concerning the respective authority of state and county party committees under Georgia law in order to deny dismissal. The relevant point is narrower. Georgia law itself affirmatively recognizes the county executive committee as an entity exercising county wide control over party affairs, possessing its own rulemaking authority, and performing an express statutory function in partisan candidate qualification and certification.

---

[22] O.C.G.A. § 21-2-153(c)(2).
[23] O.C.G.A. § 21-2-153(d)(1).
[24] O.C.G.A. § 21-2-154(a).
[25] O.C.G.A. § 21-2-154(b).

More fundamentally, the scope of Plaintiffs' federal constitutional right does not rise or fall with the scope of authority granted by state law. The Eleventh Circuit has already held in this case that if O.C.G.A. § 21-2-153 prevents Plaintiffs from excluding candidates based upon political beliefs, that "simply shows that its right to freedom of association has been burdened. It does not negate the right.". State law therefore does not answer Plaintiffs' First Amendment claim.

### C. Under Anderson-Burdick, Compelled Association Burdens a Core First Amendment Right, and the State Defendants' Asserted Interests Do Not Justify Dismissal

State Defendants invoke the Anderson-Burdick framework but effectively assume the answer to its central inquiry by characterizing Plaintiffs' associational injury as merely a "reasonable, nondiscriminatory restriction." The Supreme Court's cases do not permit that conclusion as a matter of law on the allegations before this Court.

The right implicated here occupies the core of political association. "[I]n no area is the political association's right to exclude more important than in the process of selecting its nominee."[26]. The First Amendment protects a political

[26] California Democratic Party v. Jones, 530 U.S. 567, 575 (2000)

party's ability to identify those who constitute the association and to exclude those whose political beliefs the Party does not wish to represent.[27]

State of Georgia Defendants conflate a candidate's general First Amendment rights with a nonexistent constitutional right to force an unwilling political party to accept the candidate as its representative. Although a candidate possesses rights of speech and political association, “necessary corollary" of the Party's own freedom of association is that the candidate has no right to associate with a party that has identified him as ideologically outside that association.[28].

Duke v. Massey reaffirmed the same rule, holding that the Republican Party has a First Amendment right to identify those who constitute the Party based upon political beliefs[29]. And the Eleventh Circuit has already held in this very case that those principles apply to the Catoosa County Republican Party.

Every case cited by Defendants regarding primary elections or internal party governance supports a strong distinction that political parties have a right of association with who they want, a right not to associate with those they don’t want, and for government to not interfere in their party affairs.

[27] Democratic Party of the United States v. Wisconsin ex rel. La Follette, 450 U.S. 107, 122 (1981); *Duke v. Massey*, 87 F.3d 1226, 1234 (11th Cir. 1996).
[28] Duke v. Cleland, 954 F.2d 1526, 1530-32 (11th Cir. 1992)
[29] Duke v. Massey, 87 F.3d 1226, 1234 (11th Cir. 1996)

These are easily distinguished by any cases discussing the state's interests in general elections, as those elections and ballots deal with the actual election for public office and involve little or no control over private political party organizations. In essence, while there are multitudes of cases that establish government can control the timing of elections and who can be on an actual general election ballot, there are no such cases allowing such government control of political parties and political party primaries and nominees.

Nor does a candidate possess a constitutional entitlement to obtain a party's nomination, as the Supreme Court has expressly rejected a constitutional right to a "fair shot" at winning a political party's nomination.[30]

Thus, the State may possess legitimate interests in orderly elections and ballot access, but it cannot justify compelled association by invoking a candidate's supposed First Amendment right to run under the banner of a political association that affirmatively refuses to associate with that candidate. The First Amendment recognizes no such right.

Plaintiff Catoosa County Republican Party gets to determine its positions and values through its internal party processes, and has no obligation to associate with those it deems unreflective of those values. The party has no obligation to

---

[30] New York State Board of Elections v. Lopez Torres, 552 U.S. 196, 205 (2008).

allow people to associate with it or appear on primary ballots that are not going to advance its goals, and there is no compelling state interest or ability to interfere in that.

Nothing about setting qualifying dates, administering ballots, ensuring orderly voting, preventing fraud, or establishing objective qualifications for public office necessarily requires the State to compel a private political association to accept as its partisan candidate a person whom the association has affirmatively determined does not represent its political principles. State Defendants' generalized invocation of election integrity does not establish, on a motion to dismiss, that such compelled association is constitutionally necessary.

Indeed, the State's own statutory scheme recognizes party participation in candidate qualification, party rulemaking, and party certification. Those provisions undermine the proposition that governmental displacement of the Party's associational judgment is inherently necessary to administer an orderly primary.

At minimum, Plaintiffs have stated a plausible as-applied First Amendment claim that cannot be resolved against them merely by labeling the alleged burden "reasonable" and accepting the State's asserted interests without analyzing the relationship between those interests and the particular compelled association alleged here.

## CONCLUSION

For the above captioned reasons, Defendants' Motion should be denied.

/s/ Jordan Johnson
Jordan Johnson
Georgia State Bar No. 673643
Catherine Bernard
Georgia Bar No. 505124
Attorneys for Plaintiffs

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA 30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Catherine@Justice.Law

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point type face.

/s/ Jordan Johnson
Jordan Johnson
Georgia State Bar No. 673643

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| CATOOSA COUNTY REPUBLICAN PARTY, and JOANNA HILDRETH<br><br>*Plaintiffs,*<br><br>v.<br><br>CATOOSA COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION, and TOMMY DAVIS, RON MCKELVY, NINA CRAWFORD, MARVIN CORNELISON, Each in their individual and official Capacities as Members of the Catoosa County Board of Elections and Voter Registration, TONYA MOORE, as director of the Board Of Elections and Voter Registration, Brad Raffensperger In his official capacity as Secretary of State of the STATE OF GEORGIA, and Brian Kemp in his official capacity as Governor of the STATE OF GEORGIA<br><br>*Defendants.* | ) | CIVIL ACTION FILE NO.<br><br>4:24-CV-00095-WMR |

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that the foregoing **PLAINTIFFS' BRIEF IN RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS**

has been submitted to the Clerk of Court using the CM/ECF e-filing system and served upon Defendants' counsel of record.

This 7th day of September, 2026.

/s/ Jordan Johnson
Jordan Johnson
Georgia State Bar No. 673643
Catherine Bernard
Georgia Bar No. 505124
Attorneys for Plaintiffs

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA 30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Catherine@Justice.Law