**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

CATOOSA COUNTY REPUBLICAN PARTY and JOANNA HILDRETH,

*Plaintiffs,*

v.

CATOOSA COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION, *et al.*,

*Defendants.*

Civil Action File No.: 4:24-cv-00095

**REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

State Defendants respectfully request the Court grant their motion to dismiss on any of the grounds set forth herein. As an initial matter, Plaintiffs cannot avail themselves of the *Ex parte Young* exception to sovereign immunity for either the Secretary or the Governor. Though Plaintiffs try to tie the Secretary's duties to build and review ballots to the qualification of candidates, it is clear that, as a matter of law, the Secretary has no connection to the enforcement of O.C.G.A. § 21-2-153(b). It is even clearer for the Governor. For similar reasons, Plaintiffs do not have standing to bring a claim against either State Defendant, as they have failed to demonstrate how their alleged injury is traceable to or redressable by

either State Defendant, neither of whom is alleged to have been involved in qualifying the county candidates.

Plaintiffs' First Amendment associational claim should also be dismissed. Plaintiffs argue their claim falls within the capable of repetition, yet evading review exception to mootness, but they have not alleged any more than a conjectural fear that they will be forced to associate with a candidate again because of O.C.G.A. § 21-2-153(b). Further, to the extent Plaintiffs' claim requires the Court to nullify the superior court's injunction in 2024 entitling the candidates to qualify with the superintendent, it is barred by *Rooker-Feldman*. Finally, Plaintiffs' claim fails on its merits. O.C.G.A. § 21-2-153(b) places only a reasonable, nondiscriminatory burden on Plaintiffs' associational right, which is already subordinate to the wider statewide party, and that attenuated burden is justified by the State's important regulatory interests in regulating the manner of its elections, such that any intraparty competition is resolved through the democratic process.

## II. ARGUMENT

### A. *Ex parte Young* does not apply.

"In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make

the state a party." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).

Plaintiffs argue that the Secretary is sufficiently connected to county candidate qualification because he has been designated the chief election official for National Voter Registration Act purposes; has a duty to develop, build, and review ballots for elections; and conducts periodic training sessions for registrars and superintendents. [*See* Doc. 76, at 5, 6–8.] They do not argue that he has anything to do with qualifying county candidates; in fact, they acknowledge that the superintendent has the final authority to qualify candidates. [*See id.*, at 7.] That should end the inquiry, especially since the Secretary is no longer a member of the State Election Board. *Cf. Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (holding Secretary is proper *Ex parte Young* defendant even though he "cannot directly qualify or challenge candidates for local boards of education" because, "as a member and the chairperson of the State Election Board, he has both the power and duty to ensure that the entities charged with those responsibilities comply with Georgia's election code in carrying out those tasks.").

Nevertheless, Plaintiffs insist the Secretary's role in ballot building creates the sufficient enforcement connection necessary for *Ex parte Young* purposes. [*See* Doc. 76, at 7.] But that belies a misunderstanding of the Secretary's duty in building the ballot. The Secretary does not determine which candidates' names

appear on the ballot. Indeed, by law, "the names of all candidates who have qualified with the party in accordance with [Chapter 2 of Title 21] and party rules and who have been certified to the superintendent or Secretary of State as having so qualified *shall* be printed on the ballots[.]" O.C.G.A. § 21-2-284(c) (emphasis added). Rather, the Secretary determines the design of the ballot and how it should be formatted in accordance with Georgia law. *See, e.g.*, O.C.G.A. § 21-2-286(b)(3) ("Ballots printed by an electronic ballot marker shall be designed as prescribed by the Secretary of State to ensure ease of reading by electors…."); O.C.G.A. § 21-2-372 ("Ballots shall be of suitable design, size, and stock to permit processing by a ballot scanner and shall be printed in blank ink on clear, white, or colored material."). Those duties have no connection with county candidate qualification pursuant to O.C.G.A. § 21-2-153. It stands to reason, therefore, that they do not create any connection to the *enforcement* of that statute.

For the Governor, Plaintiffs continue to rely only on the Governor's general enforcement authority. [Doc. 76, at 9.] However, for the reasons discussed in State Defendants' Motion to Dismiss, the Governor's general role as the executive of the state is insufficient connection for *Ex parte Young* purposes. *See Women's Emergency Network v. Bush*, 323 F.3d 937, 949–50 (11th Cir. 2003). Accordingly, *Ex parte Young* does not apply, and State Defendants should be dismissed.

### B. Plaintiffs' injury is neither traceable to nor redressable by State Defendants.

It is unclear whether Plaintiffs address State Defendants' standing arguments at all. At best, Plaintiffs appear to have blended their responses to State Defendants' Eleventh Amendment and standing arguments. [*See* Doc. 76, at 6–10.] However, "Article III standing and the proper defendant under *Ex parte Young* are separate issues," *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1256 (11th Cir. 2020) (cleaned up), though there some overlap between the two. *See Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1210 (N.D. Fla. 2020) (citing *Doe v. Holcomb*, 883 F.3d 971, 975–76 (7th Cir. 2018)). Nevertheless, even if Plaintiffs' arguments are construed in response to State Defendants' standing argument, Plaintiffs still cannot demonstrate how their alleged First Amendment injury is traceable to or redressable by State Defendants.

Traceability requires the plaintiff's injury be "fairly traceable" to the "challenged action" of the defendant. *Jacobson*, 974 F.3d at 1253 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs have not challenged any action by either State Defendant. Indeed, they cannot; Georgia law makes clear neither State Defendant is involved in the process of qualifying county-level candidates to appear on the partisan primary ballot. *See* O.C.G.A. § 21-2-153(d); O.C.G.A. § 21-2-6(c). Plaintiffs argue that the Secretary has statutory duties to determine the form of the ballots, certify to the proper superintendent official the

candidates that have been certified to him, and conduct periodic training sessions for superintendents and registrars. [Doc. 76, at 6, 8 (citing O.C.G.A. § 21-2-50(a)(1), (a)(4), (a)(11)).] However, the cornerstone for the causation element of standing is whether the Secretary possesses the "authority to *enforce* the complained-of provision[.]" *Jacobson*, 974 F.3d at 1257 (cleaned up) (emphasis in original). None of the listed duties Plaintiffs identify gives the Secretary authority to do so. *See id.* (rejecting argument that Secretary's power to prescribe rules and issue directives "which the Supervisors might well be obliged to follow" satisfies traceability requirement where state law expressly tasks other independent actors with determining order in which candidates appear on ballots).

Plaintiffs' arguments are even more tenuous for the Governor. Plaintiffs rely only on his role as "executive officer in charge of laws being enforced." [Doc. 76, at 9.] They do not argue that he has "enforced or threatened to enforce" O.C.G.A. § 21-2-153. *See Jacobson*, 974 F.3d at 1254. Accordingly, "[b]ecause the [State Defendants] didn't do (or fail to do) anything that contributed to [the plaintiffs'] harm, [plaintiffs] cannot meet Article III's traceability requirement." *Id.* at 1253.

Although the Court need not go further, *see Lujan*, 504 U.S. at 560 (plaintiff bears burden of establishing all three elements of standing), Plaintiffs also cannot show that their injury would be redressable by either State Defendant.[1]

[1] Plaintiffs appear to limit their argument to the Secretary. [*See* Doc. 76, at 8–9.]

Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). "[I]t must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury." *Jacobson*, 974 F.3d at 1254 (quoting *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019)) (emphasis in original).

Plaintiffs seek this Court to declare O.C.G.A. § 21-2-153(b) unconstitutional. [Doc. 68 ¶ 84.] Plaintiffs argue an injunction directed at the Secretary "preventing him from developing, programming, building, reviewing, approving, or otherwise implementing a Catoosa County Republican primary ballot" that contains candidates with whom Plaintiffs do not want to associate could redress their alleged harm. [Doc. 76, at 7.]

As discussed above, none of those listed actions have anything to do with O.C.G.A. § 21-2-153(b). *See infra*, Sec II(A). The Secretary's duties in building the ballot do not involve determining which candidates should appear on the ballot, but rather how the ballot should look—indeed, prescribing the *form* of the ballot, not the substance. An injunction directed at the Secretary would therefore not redress Plaintiffs' alleged First Amendment associational injury because it would not affect whether candidates are qualified over their objections, as that is an

entirely different process. Therefore, Plaintiffs have not shown how their injury would be redressed by a favorable decision against to the Secretary, since the Secretary has no role in enforcing O.C.G.A. § 21-2-153(b), and the Secretary's duties to develop, program, build, or review ballots do not involve placing candidates on them. Accordingly, Plaintiffs cannot meet Article III's redressability requirement.

**C. Plaintiffs have not alleged their 2024 injury is capable of repetition, yet evading review.**

Plaintiffs argue their First Amendment associational claim falls within the "capable of repetition, yet evading review" exception to mootness. Both prongs must be met for the exception to apply. *See Graham v. Att'y Gen., State of Georgia*, 110 F.4th 1239, 1246 (11th Cir. 2024). To satisfy the first prong, "there must be some reasonable, non-speculative expectation that the allegedly unlawful action will recur." *Id.* (cleaned up).

Plaintiffs argue they have more than a speculative expectation that the allegedly unlawful action undergirding their First Amendment claim will recur. [*See* Doc. 76, at 11.] They point to the 2026 primary, and their allegation that the candidate was qualified over their objection. [*Id.*] However, if Plaintiffs' claim is that O.C.G.A. § 21-2-153 is facially unconstitutional, then the allegedly unlawful action is not merely that the election superintendent in 2024 and 2026 qualified the candidates over their objections, but that it did so pursuant to O.C.G.A. § 21-2-153.

[*See id.*, at 12.] However, in their Third Amended Complaint, Plaintiffs explicitly allege that they "did not receive a loyalty oath as part of [the candidate]'s qualification paperwork in 2026 as permitted by O.C.G.A. § 21-2-153(b)(4)," [Doc. 68 ¶ 98], and that "[i]n spite of these facts, Defendants decided at the April 17, 2026 hearing that [the candidate] was qualified to be on the Republican Party's primary ballot." [*Id.* ¶ 99.] And while Plaintiffs argue for the first time in their response that the superintendent qualified the 2026 candidate "based at least in part on O.C.G.A. § 21-2-153," that is contradicted by their earlier argument. [*See* Doc. 76, at 11 ("And the same Defendant decided to add a candidate to the primary ballot over the opposition of the Plaintiffs on April 17, 2026, despite the fact that this time, the candidate did not even submit the loyalty oath a*s required by state law or Republican Party rules*." (emphasis added)).]

In other words, as alleged in their Third Amended Complaint, Plaintiffs were not subject to O.C.G.A. § 21-2-153(b) again in 2026. Therefore, the only allegation they have made in their amended complaint as to any threat of future injury is that they "believe that in the future, there will continue to be people wishing to run for office as Republicans in Catoosa County who do not reflect the platform and values of the Catoosa County Republican Party that Plaintiffs will not want to associate with." [Doc. 68 ¶ 87.] But that belief says nothing about whether such candidates will be qualified over their objections in the future because of O.C.G.A.

§ 21-2-153(b). "Thus, 'the possibility of recurrence is purely theoretical[.]'" *Graham*, 110 F.4th at 1246 (quoting *Wood v. Raffensperger*, 981 F.3d 1307, 1318 (11th Cir. 2020)). Accordingly, Plaintiffs have not shown both prongs of the exception are met, and the claim is moot.

### D. To the extent Plaintiffs seek an injunction of the superior court's order, it is barred by *Rooker-Feldman*.

The Rooker-Feldman doctrine bars claims by "state-court losers complaining of injuries caused by state-court judgments … and inviting district court review and rejection of those judgments." *Behr v. Campbell*, 8 F.4th 1206, 1210 (11th Cir. 2021) (citation omitted). "The injury must be caused by the judgment itself." *Id.* at 1212.

Plaintiffs argue they do not seek an appeal of the state court's order, but rather "prospective relief against the enforcement of the statutory scheme and governmental actions that burden Plaintiffs' independent First Amendment right of association." [Doc. 76, at 13.] But "*Rooker-Feldman* also does not prioritize form over substance. It bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else." *Behr*, 8 F.4th at 1211 (citation omitted). Claims that are "inextricably intertwined" with the state court's judgment are also barred by *Rooker-Feldman*. *See May v. Morgan Cnty. Georgia*, 878 F.3d 1001, 1005 (11th Cir. 2017) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). "A claim is inextricably

intertwined if it would effectively nullify the state court judgment, or if it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (cleaned up).

Plaintiffs initially sought the Court remove the four candidates from the ballot in 2024 and order the superintendent not count or credit votes for any of the four candidates. [*See* Doc. 68 ¶ 74.] Plaintiffs further sought declarations that they had the right to determine which candidates were on the ballot and that the county superintendent was not authorized to qualify county level candidates without "the non-compelled authorization of the Catoosa County Republican Party[.]" [*Id.* ¶ 75.] Those allegations remain in the Third Amended Complaint. However, Plaintiffs did not qualify the candidates. [*See* Doc. 42-2, at 5.] Because Plaintiffs refused to do so, the superior court fashioned a remedy that entitled the candidates to qualify with the superintendent. [*Id.*, at 6–7.] Therefore, any claim for injunctive or declaratory relief that operates to nullify the superior court's injunction, which prohibits the Plaintiffs from refusing to qualify potential candidates, is at least inextricably intertwined with the state court order and thus likely barred by *Rooker-Feldman*.

Plaintiffs argue that the superintendent later "exercised its own governmental authority … when it independently voted not to remove the [c]andidates." [Doc. 76, at 13.] However, that decision undoubtedly occurred within the context of the superior court's order finding the candidates had

otherwise complied with O.C.G.A. § 21-2-153. [*See* Doc. 42-2, at 2.] Therefore, Plaintiffs' claim only succeeds if the superior court wrongly decided the issue, and it is inextricably intertwined with the state court order.

**E. O.C.G.A. § 21-2-153(b) is constitutional under *Anderson-Burdick*.**

Plaintiffs appear to contend that O.C.G.A. § 21-2-153(b) severely burdens their First Amendment associational right to determine who constitutes their "party." [*See* Doc. 76, at 18.] Thus, they appear to argue that no state interest could possibly justify that alleged intrusion. [*Id.* at 20.]

But the right to vote and the right to associate for political purposes are not absolute. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections[.]" *Id.* "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974). Therefore, in ballot access cases, the Court must apply the *Anderson-Burdick* test to determine what scrutiny it ought to apply to the statute. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (lesser burdens trigger less exacting review); *Catoosa Cnty. Republican Party v. Catoosa Cnty. Bd. of Elections & Voter Registration*, No. 24-12936, 2025 WL 1662455, at *4 (11th Cir. June 12, 2025).

The *Anderson-Burdick* test requires a court to "weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434 (cleaned up).

Plaintiffs assert their First Amendment associational right here "occupies the core of political association" because it involves "the process of selecting [their] nominee." [Doc. 76, at 18 (citing *California Democratic Party v. Jones*, 530 U.S. 567, 575 (2000)).] But there is no "Catoosa County Republican" nominee; rather, there are Republican candidates for county-wide offices in Catoosa County. As this Court has already identified, candidates on a Republican primary ballot—even in Catoosa County—are more likely to be associated with the state or national party. [*See* Doc. 27, at 9.] Partisan primary ballots are identified by political party. *See* O.C.G.A. § 21-2-284(a) ("At the top of each ballot shall be printed in prominent type the words "OFFICIAL PRIMARY BALLOT OF ________ PARTY FOR," followed by the name and designation of the precinct for which it is prepared and the name and date of the primary."). Plaintiffs are not the "party," which is specifically defined in Georgia code as "any political organization" whose

candidate for either governor or president polled at least 20 percent of the total vote cast for that office. O.C.G.A. § 21-2-2(25).

Georgia code recognizes that distinction. While Plaintiffs may have some authority over county party affairs, including the authority to establish rules and regulations, [*see* Doc. 76, at 16–17], those rules must be "consistent with the law and rules and regulations of the state executive committee." O.C.G.A. § 21-2-111(c). Further, the qualification statutory scheme specifies that it is the broader political organization's rules that prospective candidates must follow. *See, e.g.*, O.C.G.A. § 21-2-153(b) (partisan candidates "shall qualify as such candidates in accordance with the procedural rules of their *party*…." (emphasis added)). Therefore, Plaintiffs' right to "exclude" a nominee is simply not as strong as Plaintiffs contend, as it is subordinate to the wider state party's right to manage its affairs. Thus, to the extent O.C.G.A. § 21-2-153(b) prevents Plaintiffs from excluding candidates on substantive grounds, it imposes only a small burden on Plaintiffs' First Amendment associational right.

In contrast, on the State's side, the Supreme Court has already recognized that it is "too plain for argument … that a State may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion." *California Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) (citation and punctuation omitted). O.C.G.A.

§ 21-2-153(b) merely sets forth the process by which candidates from each political party may qualify to participate in the primary. Further, the statute cleaves to the party's internal processes by providing that prospective partisan candidates must follow their party's rules to qualify, which includes affirming their allegiance to their party. O.C.G.A. § 21-2-153(b)(4). *See also* O.C.G.A. § 21-2-284(c) (candidates who qualify in accordance with their party's rules shall be printed on partisan primary ballots). *Cf. Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 121 (1981) (issue was whether state could compel national party to seat delegates chosen in way that violated national party's rules). Thus, the State's important regulatory interests justify the limited burden placed on Plaintiffs.

That the Eleventh Circuit recognized Plaintiffs have a First Amendment associational right that may have been burdened for standing purposes does not mean Plaintiffs are entitled to relief. *See Catoosa Cnty. Republican Party*, 2025 WL 1662455, at *4 ("That is not to say that the distinctions and observations that the district court made, or that Defendants raised on appeal, are not relevant to the merits analysis. [cit.] They are."). It is clear that, under the *Anderson-Burdick* test, Plaintiffs are not.

* * *

For the foregoing reasons, State Defendants respectfully request the Court grant their motion to dismiss.

Respectfully submitted this 21st day of September, 2026.


CHRISTOPHER M. CARR 112505
Attorney General

BRYAN K. WEBB 743580
Deputy Attorney General

*/s/ Elizabeth T. Young*
ELIZABETH T. YOUNG 707725
Senior Assistant Attorney General

*/s/ Danna Yu*
DANNA YU 846403
Assistant Attorney General

*Counsel for Defendant Brad Raffensperger in his official capacity as Secretary of State for the State of Georgia and Brian Kemp in his official capacity as Governor of the State of Georgia*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(C).

*/s/ Danna Yu*
DANNA YU 846403
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the foregoing **REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

This 21st day of September, 2026.

*/s/ Danna Yu*
DANNA YU 846403
Assistant Attorney General